STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRIS KALTSAS (NYBN 5460902)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7234
    Email:  chris.kaltsas2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
|     Plaintiff, | VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM* |
| v. | |
| TWO CONDOMINIUMS LOCATED AT 465 OCEAN DRIVE, UNITS 315 AND 316, MIAMI BEACH, FLORIDA 33139 | |
|     Defendants. | |

The United States of America, by its attorneys, Stephanie M. Hinds, Acting United States Attorney for the Northern District of California, and Chris Kaltsas, Assistant United States Attorney, brings this complaint and alleges as follows:

**NATURE OF THE ACTION**

1.     This is a judicial forfeiture action *in rem*, as authorized by Title 18, United States Code, Sections 981 and 983, involving the seizure and forfeiture to the use and benefit of the United States of America the following property:

1.      Two condominiums located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Florida 33139 (associated with APNs 02-42-03-097-0280 and 02-42-03-097-0290, respectively). (hereinafter, "Defendant Properties") as property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, and as property which constitutes or is derived from proceeds traceable to violations of (1) health care fraud, in violation of Title 18, United States Code, Section 1347; (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and (3) wire fraud, in violation of Title 18, United States Code, Section 1343, all by virtue of Title 18, United States Code, Sections 1956(c)(7) and 1961(1)(D).

2.      This Court has jurisdiction under Title 18, United States Code, Section 981, and Title 28, United States Code, Sections 1345 and 1355, as the Defendant Properties were involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956; and the Defendant Properties constitute or are derived from proceeds obtained, directly or indirectly, from health care fraud, in violation of Title 18, United States Code, Section 1347, by virtue of Title 18, United States Code, Section 1956(c)(7)(F); (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5, by virtue of Title 18, United States Code, Sections 1956(c)(7)(F) and 1961(1)(D); and/or (3) wire fraud, by virtue of by virtue of Title 18, United States Code, Sections 1956(c)(7)(F) and 1961(1)(A).

3.      This action is timely filed in accordance with Title 18, United States Code, Section 983(a)(3)(A).

4.      Venue is proper because acts giving rise to this forfeiture action occurred in the Northern District of California.  See Title 28, United States Code, Sections 1355(b) and 1395(a).

5.      Intra-district venue is proper in the San Francisco division within the Northern District of California.

**PARTIES**

6.      Plaintiff is the United States of America.

COMPLAINT FOR CIVIL FORFEITURE            3

7. The Defendant Properties are two condominiums located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Florida 33139 (associated with APNs 02-42-03-097-0280 and 02-42-03-097-0290, respectively).

**FACTS**

8. uBiome, Inc. ("uBiome"), was a Delaware corporation formed in or about October 2012. Beginning no later than in or about 2013, uBiome maintained and purported to maintain its principal place of business in the City and County of San Francisco in the Northern District of California.

9. ZACHARY SCHULZ APTE, who was also known as Zachary Apte and Zac Apte, was a co-founder, corporate officer, and director of uBiome.

10. JESSICA SUNSHINE RICHMAN, who was also known as Jessica Richman, was a co-founder, corporate officer, and director of uBiome.

11. On March 18, 2021, a Grand Jury in the Northern District of California indicted APTE and RICHMAN for fraudulent activity conducted through uBiome, specifically violations of Title 18, United States Code, Section 1349, conspiracy to commit health care fraud; Title 18, United States Code, Section 1347, healthcare fraud; Title 18, United States Code, Section 1028A(a)(1), aggravated identity theft; Title 18, United States Code, Section 1343, wire fraud; Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, fraud in connection with the purchase and sale of securities; Title 18, United States Code, Section 1957, money laundering; Title 18, United States Code, Section 2, aiding and abetting; and are subject to criminal forfeiture allegations.

<u>Conspiracy and Scheme and Artifice to Defraud Health Care Benefit Programs</u>

12. No later than in or about November 2015, and continuing until in or about April 2019, APTE and RICHMAN knowingly and willfully, and with the intent to defraud, executed and attempted to execute a scheme and artifice to defraud health insurance benefit programs as to a material matter and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, money and property owned by, and under the custody and control of, those health insurance benefit programs, all in connection with the delivery of, and payment for, health care benefits, items, and services. Among other purposes, APTE and RICHMAN engaged in the scheme and artifice for the purpose of inducing and attempting to induce health insurance providers to

COMPLAINT FOR CIVIL FORFEITURE            4

pay money to uBiome, all in order to obtain funds for the operations of uBiome, to make it appear to investors that health care providers' orders for uBiome's clinical tests were routinely reimbursed by health insurance providers, and to project the appearance to investors that such reimbursable orders were increasing on a monthly basis.

13. As part of the conspiracy to defraud health care benefit programs, APTE and RICHMAN developed, implemented, and oversaw a series of fraudulent practices designed to deceive approving health care providers and health care benefit programs with respect to tests that were not validated and not medically necessary, and then falsified documents and lied about and concealed material facts when insurance providers asked questions to which truthful answers would reveal the fraudulent nature of uBiome's billing model.  These practices included (1) fraudulently submitting reimbursement claims for re-tests or re-sequencings of archived samples (referred to internally as "upgrades"); (2) utilizing a captive network of doctors (the ECCN) and other providers who were incentivized to approve tests, but who were intentionally given partial and misleading information about the test requests they were reviewing; (3) fraudulently submitting reimbursement claims with respect to tests that had not been fully validated under CLIA standards and/or for which patient test results had not yet been released; (4) manipulating dates of service to conceal uBiome's actual testing and marketing practices from insurance providers, and to try to maximize billings; (5) fraudulently not charging patients for patient responsibility required by insurers, and instead, in some cases, incentivizing them with gift cards, and then making misleading statements about or concealing those practices from insurance providers; and (6) falsifying documents, using the identity of doctors and other health care providers without their knowledge or authorization through their NPI numbers and other data, and lying to insurance providers in response to requests for information, overpayment notifications, requests for recoupment of billings, denials of reimbursement requests, and/or audits investigating uBiome's billing practices.

Conspiracy and Scheme and Artifice to Defraud Investors and Potential Investors

14. By no later than in or about 2015, and continuing until in or about April 2019, in the Northern District of California and elsewhere, APTE and RICHMAN knowingly, and with the intent to defraud, devised and intended to devise a scheme and artifice to defraud investors and potential investors (referred to as "investors") as to material matters and to obtain money and property from

COMPLAINT FOR CIVIL FORFEITURE                 5

investors by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.  Among other purposes, APTE and RICHMAN engaged in the scheme and artifice in order to induce and attempt to induce investors to invest funds in equity and debt issued by uBiome, which funds could be used both to pay for the operations of uBiome and to personally enrich APTE and RICHMAN.

15.    As part of the conspiracy and scheme and artifice to defraud investors, APTE and RICHMAN developed, implemented, and oversaw an effort to deceive and mislead investors about various aspects of uBiome's business including, but not limited to, the success of uBiome's business model in terms of revenues and reimbursement rates; the threats to future revenues represented by uBiome's failure to collect patient responsibility, marketing of upgrades, and reliance on the ECCN to generate orders; and the lack of clinical utility and acceptance in the medical community of uBiome's tests.  As part of this effort, APTE and RICHMAN made and caused to be made various material misrepresentations and false and misleading statements and omissions to investors from in or about late 2015 through in or about early 2019.

16.    By virtue of these misrepresentations, misleading statements, and omissions, APTE and RICHMAN induced numerous investors to invest tens millions of dollars in uBiome equity and debt, as well as to purchase over $12 million of uBiome stock from APTE and RICHMAN themselves.

<u>Proceeds of Fraudulent Activities</u>

17.    uBiome's Series B investors transferred approximately $15 million into uBiome's business accounts in 2016 in exchange for uBiome stock and Founders Shares.  Near the end of 2016, APTE and RICHMAN began funneling funds from the uBiome account to their personal accounts, including approximately $1.2 million into accounts controlled by APTE, and approximately $600,000 into accounts controlled by RICHMAN.  These include a $595,000 transfer to Larrain Vial S.A. Correcora De Bolsa, a Chilean bank, for the benefit of APTE.

18.    Beginning in 2017, APTE and RICHMAN obtained financing for uBiome through the issuance of convertible notes to investors, again through misrepresenting vital aspects of uBiome's business.  Specifically, three investment funds transferred approximately $9 million to the uBiome account in exchange for convertible notes in July and August 2017.  Moreover, beginning in 2017,

COMPLAINT FOR CIVIL FORFEITURE                6

uBiome began accruing profits from health care payers through, as stated above, numerous means of fraudulent activity. uBiome received a total of $3,335,117.03 from health care benefit programs in the course of 761 transactions in 2017.

19.  uBiome obtained further financing in 2018 through the issuance of promissory notes and additional investment. Specifically, uBiome obtained approximately $1.8 million through the issuance of promissory notes to four separate funds in early 2018. Shortly thereafter, in and around August 2018, uBiome began in its Series C fundraising round, during which APTE and RICHMAN collectively sold approximately $10 million worth of their personal Founders Shares to various Series C investors. Other significant investors in the Series C round purchased over $30 million of uBiome stock. Throughout 2018, uBiome accumulated $26,152,976.17 in health care payments through 7751 transactions.

20.  In 2017, APTE and RICHMAN began the process of forming the first of many legal trusts through which they would buy and sell properties. The first of these, the Juniper Revocable Trust, was formed on August 31, 2017. The trust was initially capitalized with $4,000 in September 2017. Shortly thereafter, on September 8, 2017, APTE and RICHMAN applied for a mortgage on a property located at 1025 NE 5th Avenue, Camas, Washington 98607 ("the Camas property"). Subsequently, APTE and RICHMAN both transferred $50,149.36 (a total of $100,298.72) from their personal financial accounts to the Juniper Revocable Trust's bank account on October 12, 2017. Notes on the transfers indicated that the transfers were for a down payment for the Camas property.

21.  APTE and RICHMAN then conducted several real estate transactions in late 2019 and early 2020. On September 4, 2019, RICHMAN and APTE transferred funds from their personal bank and investment accounts totaling $373,969.24 to Wells Fargo Bank (both transferring $186,984.62). Both transfers indicated that the purpose of the respective transfers was to pay the balance of the mortgage on the Camas property. The transfers from the both accounts are traceable to the proceeds of the specified unlawful activities.

22.  APTE and RICHMAN sold the Camas property on January 28, 2020. The proceeds from the sale were $555,055.91, which were wired from the Chicago Title Company to the trust account of ATTORNEY 1. The funds were held in trust until the purchase of two condominiums located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Florida 33139 (*i.e.*, the Defendant Properties). These

properties were both purchased on February 21, 2020; Unit 315 sold for $510,000, while Unit 316 sold for $500,000. The purchase of the Defendant Properties was conducted entirely in cash, most of which was transferred from the trust account of ATTORNEY 1. The remaining funds were transferred to escrow companies and others over the course of thirteen transfers from eight separate bank and financial accounts belonging to APTE and RICHMAN.

23. The funds used to purchase these properties were derived, in substantial part, from funds traceable to the specified unlawful activities above. Moreover, these properties are involved in money laundering. The means and methods of paying for these homes, including a series of complicated financial transactions; the use of various intermediary accounts, trusts, and companies; and the use of an intermediary individual (ATTORNEY 1), all indicate that the purpose of the transfer was to conceal the nature, source, and location of the proceeds of specified unlawful activities. The Defendant Properties are accordingly subject to forfeiture as they are properties involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956 (money laundering), all pursuant to Title 18, United States Code, Section 981(a)(1)(A).

24. Finally, APTE and RICHMAN have also engaged in several international transfers of funds indicative of money laundering activity. Neither APTE nor RICHMAN have been present in the United States since mid-2020. They have nevertheless transferred hundreds of thousands of dollars among their various bank accounts to their brokerage accounts at Fidelity Investments beginning in early 2020. APTE and RICHMAN subsequently transferred all of their funds in certain brokerage accounts to their other personal bank accounts in March 2020. In August of 2020, APTE and RICHMAN transferred over $750,000 to banks located in London, UK, and Germany, using their primary bank and financial accounts. Subsequently, on January 4, 2021, APTE and RICHMAN each sent $50,000 to ATTORNEY 1's trust account, noting that the money was to be spent for a construction escrow on the Defendant Properties. At least one of these accounts was used to funnel money collected from several accounts across various financial institutions prior to transferring the money internationally to Germany.

25. Accordingly, as the transaction for the Defendant Properties were part of a series of real estate transactions that appear to be designed to conceal the illicit nature of funds, the Defendant Properties are involved in money laundering and are accordingly forfeitable to the United States.

Moreover, as the funds transferred to ATTORNEY 1 for the purpose of improving the Defendant Properties were the proceeds of securities fraud and health care fraud, and because $100,000 of those illicitly obtained funds were spent on the Defendant Properties, and because those funds were in an account used to conceal those proceeds, the Defendant Properties are involved in money laundering.

## CLAIM FOR RELIEF

26. The United States incorporates by reference the allegations in paragraphs 1 through 25 as though fully set forth herein.

27. Title 18, United States Code, Section 981(a)(1)(A) subjects any property, real or personal, involved in a transaction in violation of Title 18, United States Code, Section 1956 (money laundering) to forfeiture to the United States.

28. Title 18, United States Code, Section 981(a)(1)(C) subjects any property, real or personal, which constitutes or is derived from proceeds traceable to proceeds of any specified unlawful activity to forfeiture to the United States.

29. Title 18, United States Code, Section 1956(a)(1)(B)(i) prohibits a person from conducting or attempting to conduct a financial transaction when knowing that the property involved in said transaction represents the proceeds of some form of unlawful activity, and when knowing that said transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

30. Title 18, United States Code, Section 1957 prohibits a person from engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

31. Title 18, United States Code, Section 1347 prohibits a person from executing, or attempting to execute, a scheme or artifice to defraud any health care benefit program, or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property under the control of a health care benefit program in connection with the delivery of or payment for health care benefits, services, or items.

32. Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5 prohibits a person from using or employing any manipulative or deceptive device or contrivance in connection with the sale of securities.

33. Title 18, United States Code, Section 1343 prohibits a person who, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, from transmitting, or causing the transmission of, any writing, sign, signal, picture, or sound by means of wire, radio, or television communication in interstate or foreign commerce for the purpose of executing said scheme or artifice.

34. A violation of Title 18, United States Code, Section 1347 is a "specified unlawful activity" for purposes of Title 18, United States Code, Section 981, by virtue of its reference to Title 18, United States Code, Section 1956(c)(7)(F).

35. A violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations is a "specified unlawful activity" for purposes of Title 18, United States Code, Section 981, by virtue of its reference to Title 18, United States Code, Section 1956(c)(7)(A), which incorporates Title 18, United States Code, Section 1961(1)(D) (listing "fraud in the sale of securities" as a specified unlawful activity).

36. A violation of Title 18, United States Code, Section 1343 is a "specified unlawful activity" for purposes of Title 18, United States Code, Section 981, by virtue of its reference to Title 18, United States Code, Section 1956(c)(7)(A), which incorporates Title 18, United States Code, Section 1961(1)(A).

37. In light of the foregoing, and considering the totality of the circumstances, it is more likely than not that the Defendant Properties represent property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Sections 1956 and 1957. Moreover, in light of the foregoing and considering the totality of the circumstances, it is more likely than not that the Defendant Properties are property constituting or derived from proceeds traceable to the commission of an offense defined as a "specified unlawful activity." The Defendant Properties listed herein are thus subject to forfeiture under Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), respectively.

*****

WHEREFORE, plaintiff the United States of America requests that due process issue to enforce the forfeiture of the above listed Defendant Properties; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that the Court enter a judgment forfeiting the Defendant Properties; and that the United States of America be awarded such other relief as may be proper and just.

DATED:  May 26, 2021                    Respectfully submitted,

                                        STEPHANIE M. HINDS
                                        Acting United States Attorney


                                        _____/s/_____
                                        CHRIS KALTSAS
                                        Assistant United States Attorney

**VERIFICATION**

I, Elaine Farrell, state as follows:

1. I am a special agent with the Department of Defense Office of Inspector General, Defense Criminal Investigative Service. I am an agent assigned to this case. As such, I am familiar with the facts and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained therein to be true.

\* \* \* \* \*

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25 day of May, 2021, in Oakland, California.

Elaine Farrell
Special Agent
Defense Criminal Investigative Service