W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA MAHONEY (*Pro Hac Vice*)
LUIS E. QUIÑONES FERNANDEZ (*Pro Hac Vice*)
YASMIN BEST (Cal. Bar No. 235959)
FAEGRE DRINKER BIDDLE & REATH, LLP
1800 Century Park East, Ste. 1500
Los Angeles, California 90067

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TWO CONDOMINIUMS LOCATED AT 465 OCEAN DRIVE, UNITS 315 AND 316, MIAMI BEACH, FLORIDA 33139<br><br>Defendants. | Case No. 21-CV-04060-CRB<br><br>**MOTION TO DISMISS THE UNITED STATES' VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**<br><br>Courtroom: SF Courtroom 6 - 17th Floor<br>Date: TBD<br>Time: TBD<br><u>ORAL ARGUMENT REQUESTED</u> |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............ ii

I. SUMMARY OF ARGUMENT ............ 1

II. BACKGROUND ............ 1

III. LEGAL STANDARD ............ 2

IV. DISCUSSION ............ 4

A. The Complaint Fails to Adequately Allege That Dr. Apte or Dr. Richman Engaged in Specified Unlawful Activity or, if They Did, That They Received Proceeds from That Fraud. ............ 4

1. The Complaint Does Not Allege a Wire Fraud Scheme. ............ 5

2. The Complaint Does Not Allege That Dr. Apte or Dr. Richman Obtained Proceeds of the Alleged Healthcare Fraud Scheme. ............ 5

3. The Complaint Does Not Allege a Viable Securities Fraud Violation. ............ 6

B. The Complaint Fails to Allege the Florida Condominiums Were Acquired with the Proceeds of Fraud. ............ 8

C. The Forfeiture Complaint Fails to Allege Facts That the Florida Condominiums Were an Instrumentality of Money Laundering. ............ 12

V. CONCLUSION ............ 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*In re: uBiome, Inc.*,
No. 19-11938-LSS, (Del. Bankr. Sept. 4, 2019) .......... 1

*Schroeder v. McDonald*,
55 F.3d 454 (9th Cir. 1995) .......... 11

*United States v. $1,399,313.74 in U.S. Currency*,
591 F. Supp. 2d 365 (S.D.N.Y. 2008) .......... 10

*United States v. $50,040 in U.S. Currency*,
No. 06-cv-04552 WHA, 2007 WL 1176631 (N.D. Cal. Apr. 20, 2007) .......... 3

*United States v. $97,667.00 in U.S. Currency*,
538 F. Supp. 2d 1246 (C.D. Cal. 2007) .......... 3, 10

*United States v. 8 Gilcrease Lane, Quincy Fla. 32351*,
587 F. Supp. 2d 133 (D.D.C. 2008) .......... 11

*United States v. Aguilar*,
782 F.3d 1101 (9th Cir. 2015) .......... 2, 4, 7, 11

*United States v. Apte, et al.*,
No. 21-cr-116-CRB, Dkt. No. 1 (N.D. Cal. March 18, 2021) .......... 2

*United States v. Funds in Amount of $246,197.44*,
No. 14-cv-01570, 2015 WL 1943346 (N.D. Ill. Apr. 29, 2015) .......... 10

*United States v. Mondragon*,
313 F.3d 862 (4th Cir. 2002) .......... 2

*United States v. One Gulfstream G-V Jet Aircraft*,
941 F. Supp. 2d 1 (D.D.C. 2013) .......... 2, 7, 10, 11

*United States v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia*,
No. 11-cv-3582-GW SSX, 2012 WL 8455336 (C.D. Cal. Apr. 12, 2012) .......... 5, 7

*United States v. Real Prop. Located In Brentwood, California*,
No. 15-cv-06794-RGK-AJWX, 2016 WL 11121402 (C.D. Cal. Mar. 15, 2016) .......... 2, 3

*United States v. Real Prop.*, No. 6:18-CV-315-REW, 2021 WL 144245 (E.D. Ky. Jan. 15, 2021)....3

*United States* v. *Rogers*, 321 F.3d 1226, 2003 WL 1112412 (9th Cir. 2003) ....12

*United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021) ....8, 9

*United States v. Two Condominiums Located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Florida 33139*, Case No. 21-cv-04060 (N.D. Cal. May 27, 2021) ....1

**Statutes**

15 U.S.C. §§ 78j(b), 78ff ....6

18 U.S.C. § 981(a)(1)(A) ....11

18 U.S.C. § 981(a)(1)(c) ....4, 8

18 U.S.C. § 983(c)(3)....12

18 U.S.C. § 1347....5

18 U.S.C. § 1956(a)(B)(i) ....12

18 U.S.C. §§ 1956(c)(7) & 1961(1)(D) ....8

**Other Authorities**

12 Wright & Miller, Fed. Pract. & Proc. § 3242 (3d ed.)....2

17 C.F.R. § 240.10b-5....6

Federal Rules of Civil Procedure Rule 8 ....2, 3

Supplemental Rule G(2) ....2, 11

## I. SUMMARY OF ARGUMENT

Claimant ZACHARY APTE, by his counsel COVINGTON & BURLING, LLP, and Claimant JESSICA RICHMAN, by her counsel, FAEGRE DRINKER BIDDLE & REATH, LLP, respectfully submit this MOTION TO DISMISS THE UNITED STATES' VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM* ("Complaint") pursuant to Rule G(8)(b)(i) of the Federal Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Complaint fails to allege viable claims of specified unlawful activity or any actual connection between the defendant properties and the government's summary allegations of wrongdoing.  Supplemental Rule G requires a forfeiture complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," which constitutes "a higher standard than 'notice pleading.'"  *United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015).  Because the Complaint fails to meet this standard, it must be dismissed.

## II. BACKGROUND

Dr. Zachary Apte and Dr. Jessica Richman are the co-founders and former co-CEOs of uBiome, a microbial genomics science company.  Compl. ¶¶ 9-10.[1]  By April 2019, uBiome had grown from a three-person, crowdfunded startup in 2012 into an international biotechnology business employing roughly 300 people at company operations sites in San Francisco, California; Vancouver, Washington; New York, New York; Cambridge, Massachusetts; Santiago, Chile; and La Plata, Argentina.  *See In re: uBiome, Inc.*, No. 19-11938-LSS, Dkt. 2 at ¶¶ 22-23 (Del. Bankr. Sept. 4, 2019).  Dr. Apte and Dr. Richman left uBiome as executives in April 2019 and as board members in July 2019.  On September 4, 2019, the company filed for Chapter 11 bankruptcy protection.  *Id.* Dkt. 1.  In January 2020, Dr. Apte and Dr. Richman sold the home they had purchased near uBiome's Vancouver, Washington facility and used the lawful proceeds from that sale to buy adjoining condominiums in Miami Beach, Florida (the

---

[1] Citations to the record in this case, *United States v. Two Condominiums Located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Florida 33139*, Case No. 21-cv-04060 (N.D. Cal. May 27, 2021), are referenced by their docket entry ("Dkt.") number, except for Docket Entry 1, the Verified Complaint For Civil Forfeiture *In Rem*, which is referenced as "Compl."

"Florida Condominiums"), which they purchased in February 2020. Compl. ¶ 22.[2] In January 2021, Dr. Apte and Dr. Richman established a construction escrow account to hold funds for the repair and consolidation of the two adjoining units into a single home. Compl. ¶ 24. On March 18, 2021, Dr. Apte and Dr. Richman were charged in a criminal indictment that contains some of the same fraud accusations set forth in this civil forfeiture action. *See United States v. Apte, et al.*, No. 21-cr-116-CRB, Dkt. No. 1 (N.D. Cal. March 18, 2021). That indictment also contains criminal forfeiture allegations that seek the forfeiture of the same Florida Condominiums at issue here. *Id.* at ¶¶ 91-95. The planned construction on the Florida Condominiums to create a single residence was postponed, and the escrow funds were never used.

## III. LEGAL STANDARD

Because of the drastic nature of the remedy being sought, complaints for forfeiture in rem are subject to a heightened pleading standard. *See Aguilar*, 782 F.3d at 1109 ("[W]e have held that this is a higher standard than "notice pleading"); *see also* 12 Wright & Miller, Fed. Pract. & Proc. § 3242 (3d ed.) (explaining that the supplemental rules applicable to forfeiture actions "require[] a more particularized complaint than is demanded in civil actions generally;" "added specifics [are] thought appropriate because of the drastic nature of th[e] remedies" at issue). In addition to satisfying Federal Rule of Civil Procedure ("Rule") 8(a), a federal, *in rem* forfeiture action also must satisfy the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See United States v. Real Prop. Located In Brentwood, California*, No. 15-cv-06794-RGK-AJWX, 2016 WL 11121402, at *2 (C.D. Cal. Mar. 15, 2016) ("In addition to satisfying the court's standards set forth in *Iqbal*, in an *in rem* forfeiture action arising from a federal statute, a court must apply the [supplemental rules], which provide a slightly higher pleading standard."); *United States v. One Gulfstream G-V Jet Aircraft*, 941 F.

[2] As set forth in the Complaint, the Florida Condominiums are more particularly defined as 465 Ocean Drive, Unit 315, Miami Beach, Florida 33139 (Assessor's Parcel Number: 02-42-03-097-0280) and 65 Ocean Drive, Unit 316, Miami Beach, Florida 33139 (Assessor's Parcel Number: 02-42-03-097-0290). Compl. ¶ 1. As set forth in the claims of Dr. Apte, Dr. Richman and Gabriel Ceriotti, *see* Dkts. 15, 17-18, Dr. Apte and Dr. Richman purchased the residences through a land trust dated February 4, 2020, named the 465 Ocean Land Trust. Dr. Apte and Dr. Richman are the sole beneficial owners of the 465 Ocean Land Trust and, along with its trustee, Gabriel Ceriotti, are the only claimants in this action.

Supp. 2d 1, 14 (D.D.C. 2013) (requiring "a pleading that is somewhat more exacting than the liberal notice pleading standard contemplated by Rule 8(a)(2)."). Specifically, Supplemental Rule G requires a forfeiture complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).

To satisfy this heightened pleading standard, a forfeiture complaint must allege enough facts for claimants to understand the government's forfeiture theories, undertake an adequate investigation, and draft a response to the allegations. *Aguilar*, 782 F.3d at 1108-09; *United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002). A complaint also must meet the familiar *Iqbal / Twombly* standards applicable under Rule 8. *Real Prop. Located In Brentwood, Cal.*, 2016 WL 11121402, at *2. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[3]

In evaluating a motion to dismiss, the Court must (1) construe the complaint in the light most favorable to the government, and (2) accept all well-pleaded factual allegations and reasonable inferences therefrom as true. *United States v. $50,040 in U.S. Currency*, No. 06-cv-04552 WHA, 2007 WL 1176631, at *2 (N.D. Cal. Apr. 20, 2007). The Court is limited to the face of the complaint's allegations, judicially noticeable matters, and documents referenced in the complaint so long as their authenticity is not disputed. *Id.* at *1.

---

[3] *See also United States v. $97,667.00 in U.S. Currency*, 538 F. Supp. 2d 1246, 1249 (C.D. Cal. 2007) (applying the *Twombly* / *Iqbal* standard to a forfeiture complaint, stating: "The court is not required to accept as true, however, 'legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.'") (quoting *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); *Real Prop. Located In Brentwood, Cal.*, 2016 WL 11121402, *2 (applying *Twombly* / *Iqbal* standard to forfeiture action); *United States v. Real Prop.*, No. 18-cv-315-REW, 2021 WL 144245 (E.D. Ky. Jan. 15, 2021) (consistent with *Iqbal*, forfeiture rules require more than "threadbare elemental recital[s] supported by mere conclusory statements").

## IV. DISCUSSION

The Complaint alleges that the Florida Condominiums are subject to forfeiture because they were: (1) purchased with proceeds of specified unlawful activity, and (2) were acquired to conceal the proceeds of that specified unlawful activity. Compl. ¶¶ 1-2. The Complaint fails, however, to plead facts alleging plausible violations of predicate specified unlawful activity or to allege a connection between the Florida Condominiums and the government's vague allegations of fraud. Despite multiple, specific references to the existence and contents of numerous financial accounts, the Complaint offers only vague and conclusory allegations to associate the alleged fraud to the Florida Condominiums. The Complaint summarily avers, without supporting factual allegations, that "[t]he funds used to purchase these properties were derived, in substantial part, from funds traceable to the specified unlawful activities." Compl. ¶ 23. This threadbare legal conclusion is insufficient to survive the pleading stage. A forfeiture claim—like any federal civil cause of action—cannot rest on rote recitations of legal elements to satisfy the strictures of the Supplemental Rules and Rules of Procedure. Rather, a complaint must allege enough facts to give notice to claimants of the government's theory connecting the defendant property to the underlying conduct upon which forfeiture is based. *See Aguilar*, 782 F.3d at 1108-09. The Complaint does not do this, and accordingly, it must be dismissed.

### A. The Complaint Fails to Adequately Allege That Dr. Apte or Dr. Richman Engaged in Specified Unlawful Activity or, if They Did, That They Received Proceeds from That Fraud.

The government's first claim for forfeiture purportedly arises under 18 U.S.C. § 981(a)(1)(c), which makes property forfeitable if it constitutes or is derived from proceeds of "specified unlawful activity" ("SUA"). Compl. ¶ 1; 18 U.S.C. § 981(a)(1)(c). The Complaint alleges that Dr. Apte and Dr. Richman engaged in the SUAs of wire fraud, securities fraud, and healthcare fraud, and that the Florida Condominiums constitute proceeds of or are derived from such fraud. *Compl*. ¶ 1. The Complaint, however, omits necessary and specific allegations that the defendants engaged in a legally cognizable wire fraud or securities fraud scheme, and elsewhere explicitly states that Dr. Apte and Dr. Richman did not receive or use any proceeds from the alleged healthcare fraud scheme. The Complaint thus fails to state a claim under 18 U.S.C. § 981(a)(1)(c) and should be dismissed.

**1. The Complaint Does Not Allege a Wire Fraud Scheme.**

Although Paragraph 1 of the Complaint alleges that the Florida Condominiums are forfeitable as the proceeds of wire fraud, *see* Compl. ¶ 1, the Complaint otherwise neglects to plead the existence of a wire fraud scheme at all—much less provide enough facts to put Dr. Apte and Dr. Richman on notice of the government's theory so they can investigate and prepare a response. *See generally, id.*; *Aguilar*, 782 F.3d at 1108-09. The Complaint omits allegations that could substantiate the elements of wire fraud, in particular (1) the nature and purpose of the scheme, (2) the statements and omissions carried out in furtherance of the scheme, and (3) the interstate or foreign wire communication(s) used to carry out or attempt to carry out an essential part of the scheme. Without these basic, necessary allegations, bedrock federal pleading rules simply do not allow the government to proceed to discovery on its claim to forfeit the Florida Condominiums as the proceeds of wire fraud. *See, e.g.*, *United States v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia*, No. 11-cv-3582-GW SSX, 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012) (dismissing forfeiture complaint that failed to allege acts of extortion and misappropriation—the alleged SUAs underlying the government's forfeiture allegations).

**2. The Complaint Does Not Allege That Dr. Apte or Dr. Richman Obtained Proceeds of the Alleged Healthcare Fraud Scheme.**

The government next asserts that the Florida Condominiums are forfeitable as proceeds of healthcare fraud. *See* Compl. ¶¶ 1, 12-13. For support, the government in Paragraph 12 includes a summary recitation of an alleged healthcare fraud scheme that parrots the legal elements of the federal healthcare fraud statute, 18 U.S.C. § 1347. *See id.* at ¶ 12. Paragraph 13 then purports to summarize the allegedly fraudulent practices of that scheme. *Id.* at ¶ 13.[4] But the Complaint fails for the simple reason that it never alleges that Dr. Apte or Dr. Richman received proceeds from this supposed scheme. To the contrary, the Complaint alleges that the purpose of the alleged healthcare fraud scheme was to induce "health insurance providers *to pay money to uBiome*, all in order to obtain funds for the

[4] The "substantive" healthcare fraud allegations in Paragraph 13—which purport to summarize various theories of liability alleged against Dr. Apte and Dr. Richman—are also presented in a cursory, unexplained, and therefore legally unsupportable fashion. *See* Compl. ¶ 13.

*operations of uBiome*." *Id.* at ¶ 12 (emphasis added). Paragraphs 18 and 19 then purport to quantify the total amount "*uBiome received*" as a result of the alleged scheme. *Id.* at ¶¶ 18-19 (emphasis added).

The Complaint thus never alleges that either Dr. Apte or Dr. Richman obtained—either directly or indirectly—the insurance payments paid to uBiome as a result of the alleged healthcare fraud. *See generally id*. Put differently, the Complaint's non-conclusory allegations, which are assumed true for the purposes of this motion, do not permit a reasonable inference that Dr. Apte or Dr. Richman received a single dollar of any alleged healthcare fraud proceeds, much less that they used those proceeds to acquire the Florida Condominiums. The alleged healthcare fraud violations thus cannot serve as a viable predicate for forfeiture.

**3. The Complaint Does Not Allege a Viable Securities Fraud Violation.**

The Complaint next alleges that Dr. Apte and Dr. Richman engaged in securities fraud by deceiving venture capitalists and other uBiome investors by misleading them "about various aspects of uBiome's business," in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5. Compl. ¶¶ 1-2, 15, 35. Yet, the government fails to allege the actual elements of a securities fraud violation at all, instead relying on vague, generalized allegations of misconduct in support of its securities fraud theory that does not include a nexus between the alleged misconduct and the necessary legal elements underlying a securities fraud violation.

To start, the Complaint does not plead a single fact or allege the necessary legal element that Dr. Apte and Dr. Richman used "[a] means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange" to commit the alleged fraud. *See* 15 U.S.C. § 78j ("It shall be unlawful for any person, directly or indirectly, *by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange* . . . .") (emphasis added); 17 C.F.R. § 240.10b-5 (same); *see also* Ninth Circuit Manual of Modern Criminal Jury Instructions, § 9.9 (Securities Fraud). This is not a mere makeweight allegation. Just the opposite. Without alleging the factual predicate of an actual securities fraud violation, the government cannot proceed to discovery on its claim of forfeiture against the Florida Condominiums.

The government's remaining securities fraud allegations are too vague and conclusory to support the government's forfeiture allegations. The Complaint's "substantive" securities fraud allegations are contained in Paragraph 15, which alleges that Dr. Apte and Dr. Richman "developed, implemented, and oversaw an effort to deceive and mislead investors about various aspects of uBiome's business." Compl. ¶ 15. Paragraph 15 then generally avers that Dr. Apte and Dr. Richman misled investors regarding uBiome's "business model in terms of revenues and reimbursement rates;" did not warn investors about risks associated with uBiome's business practices; and did not advise prospective shareholders regarding "the lack of clinical utility and acceptance in the medical community of uBiome's tests." *Id.* The Complaint, however, does not identify or describe a single false statement that Dr. Apte or Dr. Richman made to a uBiome investor, a specific material omission they should have disclosed, the investor(s) to whom those deceptions were directed, or when such alleged false statements were made. *Id.* The types of conclusory allegations found in the Complaint—"framed in a vague, generalized manner"—are thus "incompatible with the pleading standard that applies to forfeiture in rem actions." *One White Crystal Covered Bad Tour Glove*, 2012 WL 8455336, *3; *see also One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 15 (dismissing complaint where "the government [did] not provide enough detail for the court to infer the contours of the illicit scheme"). Dr. Apte and Dr. Richman are entitled to notice of the government's theory of forfeitability before the government may divest them of their property. *See Aguilar*, 782 F.3d at 1108-09. The Complaint fails to provide it, and thus should be dismissed.

The lack of support for the Complaint's securities fraud allegations takes on added importance because the Complaint defines this alleged fraud as a scheme to defraud both uBiome's "investors and potential investors," whom the Complaint then refers to collectively as "investors." Compl. ¶ 14. Dr. Apte and Dr. Richman, of course, did not and could not receive "proceeds" from "potential investors" who *declined to invest* in uBiome or purchase any personal founders' shares. Accordingly, misrepresentations to potential investors cannot serve as a basis for the government's forfeiture claim. Thus, the vague allegation that Dr. Apte and Dr. Richman "developed, implemented and oversaw an effort to deceive and mislead" both investors and potential investors "about various aspects of uBiome's business" is fatally ambiguous because it is impossible to know what, if any, misleading statements were

made or to whom they were directed, or what, if any, information was materially omitted from the investors who actually invested in uBiome. *Id.* at ¶ 15.

The ambiguity of the government's securities fraud allegations undermines its forfeiture claim for yet an additional reason. According to the Complaint, uBiome obtained funding through specific funding transactions. Compl. ¶¶ 17-19.[5] Dr. Apte and Dr. Richman also sold some of their personal founders' shares in uBiome at the time of the Series B and Series C funding rounds. *See id.* at ¶¶ 17,19. The Complaint, however, fails to identify what alleged misrepresentations were made to which investors—those who purchased equity from uBiome and those who purchased shares from Dr. Apte and Dr. Richman. This additional pleading deficiency renders it impossible for Dr. Apte and Dr. Richman to know the government's theory regarding what alleged misrepresentations or purported omissions generated the "proceeds" the government believes are subject to forfeiture.

**B.   The Complaint Fails to Allege the Florida Condominiums Were Acquired with the Proceeds of Fraud.**

The Complaint also fails to allege facts that tie the acquisition of the Florida Condominiums to any proceeds of the alleged fraud schemes. As set forth above, the government failed to allege any substantive facts to support a wire fraud scheme, let alone facts that would connect the proceeds of that supposed scheme to the Florida Condominiums. The Complaint then alleges that *uBiome*—not Dr. Apte and Dr. Richman personally—received the proceeds of the alleged healthcare fraud scheme. While the Complaint concludes that the allegedly fraudulent sale of personal equity benefitted Dr. Apte and Dr. Richman, the Complaint fails to allege that Dr. Apte and Dr. Richman obtained the proceeds that *uBiome received* from the company's funding rounds. The Complaint does not contain any facts tying uBiome's receipts to the Florida Condominiums, and similarly fails to allege *facts* that Dr. Apte and Dr. Richman used the proceeds from the sale of their personal founders' shares to acquire the Florida Condominiums. In short, the Complaint fails to connect the property to any alleged fraud as required to sustain a forfeiture claim.

---

[5] In particular, uBiome received funding from investors that participated in a 2016 Series B round (Compl. ¶ 17), the issuance of convertible notes in July and August of 2017 (*id.* at ¶ 18), the issuance of promissory notes in early 2018 (*id.* at ¶ 19), and a 2018 Series C round that raised $30 million (*id.*).

As previously discussed, 18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of property "which constitutes or is derived *from proceeds traceable* to an SUA," like wire fraud, healthcare fraud or securities fraud. *See* 18 U.S.C. § 981(a)(1)(C) (by virtue of 18 U.S.C. §§ 1956(c)(7) & 1961(1)(D)). The forfeiture statute thus requires the government to trace the defendant property back to the unlawful scheme proceeds. *See United States v. Thompson*, 990 F.3d 680, 686 (9th Cir. 2021) ("[O]nly property that is traceable to the proceeds is forfeitable, not other property that [defendants] may own[.]"). The Complaint is replete with cursory allegations leveled against Dr. Apte and Dr. Richman and, at the same time, suggestive paragraphs referencing financial transactions reflecting the government's acquisition and review of voluminous bank records associated with uBiome and Dr. Apte and Dr. Richman.  In shotgun fashion, the Complaint mentions more than 26 transfers to and from as many as 15 accounts over a period of 5 years, *without ever connecting the proceeds allegedly used to purchase the Florida Condominiums to an SUA*.  Compl. ¶¶ 17-24.  Critically, despite the government's laundry list of bank transactions, the Complaint completely fails to connect the Florida Condominiums to proceeds of any alleged fraud.  The allegations therefore fail to supply an adequate basis to associate—let alone trace—proceeds derived from the allegedly fraudulent schemes to the Florida Condominiums.  The government must allege such facts to proceed to discovery.  Its failure to do so is fatal to its claims.

At most, the Complaint alleges that Dr. Apte and Dr. Richman received funds from the sale of their personal uBiome founders shares in 2016 and 2018, *see* Compl. ¶¶ 16-17, 19, and that years later, Dr. Apte and Dr. Richman paid off the mortgage on their home in Camas, Washington (the "Washington House"). *Id.* at ¶ 21.  Then, after uBiome's bankruptcy, Dr. Apte and Dr. Richman sold the Washington House and wired the proceeds to the escrow account of their Florida real estate attorney who managed the purchase escrow of the Florida Condominiums.  Compl. ¶ 22.

Despite the government's clear access to and review of substantial financial records, there is no factual allegation that the proceeds at issue—the funds received from the sale of Dr. Apte's and Dr. Richman's founders shares—were used to pay off the Washington House mortgage.  In other words, the Complaint never connects the proceeds from the possible alleged SUA to the Florida Condominiums.  That bears repeating: not a single allegedly ill-gotten dollar is tied to the purchase of Florida Condominiums.  *See Thompson*, 990 F.3d at 690 ("Under Section 981, forfeiture cannot extend

beyond the tainted property and proceeds traceable to it"). Instead, the Complaint relies on the conclusory assertion that the funds used to pay off the Washington House mortgage were "traceable to the proceeds of the specified unlawful activities"—a cursory and unsupported legal conclusion masquerading as a factual allegation. The shortcomings of the Complaint do not end there. The Complaint also does not identify which of the Florida Condominiums was purchased with the proceeds from the sale of the Washington House. The Complaint also makes no attempt whatsoever to trace the remaining funds used to purchase the Florida Condominiums (*i.e.*, those not associated with the Washington House) to proceeds of an SUA.[6]

The drastic remedy of forfeiture requires more than the identity of assets and a general allegation of fraud. A complaint must provide some factual assertion connecting the alleged proceeds of an SUA to the defendant property to survive a motion to dismiss. *See United States v. Funds in Amount of $246,197.44*, No. 14-cv-01570, 2015 WL 1943346 at *2 (N.D. Ill. Apr. 29, 2015) ("A complaint that is devoid of factual support linking the monies seized in the Subject Account to any criminal or illegal act will be dismissed for failure to state a claim.") (internal citation omitted). The bare unsupported assertions that the defendant properties are traceable to or derived from criminal activity is simply insufficient to survive the instant motion to dismiss. *See United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 374 (S.D.N.Y. 2008) ("Although the Government states in conclusory fashion that 'the Defendant Funds constitute criminally derived property derived from narcotics trafficking and the laundering of monetary instruments,' this bare allegation cannot support the claim."). The Complaint must provide *some basis* to connect the Florida Condominiums to the alleged fraud before requiring the parties to endure the yoke of litigation. *See United States v. $97,667.00 in U.S. Currency*, 538 F. Supp. 2d 1246, 1253 (C.D. Cal. 2007) (the complaint must state "sufficiently detailed facts to support a reasonable belief" the government will be able to show a connection between the defendant property and the allegations of fraud).

---

[6] Paragraph 21 alleges that the Washington House mortgage was purchased with funds "traceable to the proceeds of specified unlawful activities." Compl. ¶ 21. Paragraph 23 then repeats that same naked allegation: "The funds used to purchase these properties were derived, in substantial part, from funds traceable to the specified unlawful activity above." *Id.* at ¶ 23. These allegations are not supported by any facts in the Complaint.

This also is not a case in which the Complaint alleges circumstantial evidence allowing reasonable inferences to be drawn that plausibly establish a connection between the defendant properties and the underlying SUA. The property at issue is not uniquely lavish, expensive, or beyond the legitimate means of two company founders and co-executives. *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16 (dismissing forfeiture where the government's allegations did not rule out an alternative plausible inference that the defendant property may have been acquired with legitimate funds). And the allegedly tainted mortgage payoff of less than $375,000 split between Dr. Apte and Dr. Richman is not extraordinary given their experience, income, and professional backgrounds. The Complaint thus leaves entirely open the plausible inference that the Washington House and the Florida Condominiums were purchased with legitimate funds. The lack of a reasonably competing inference drawn from the government's allegations dooms the Complaint.

Supplemental Rule G(2) and Rule 8(a) require more than the untethered recitation of legal conclusions alleging forfeitability, even if they do not require the government to trace every tainted dollar to the defendant property. *See Aguilar*, 782 F.3d at 1109. The government's opaque allusions to the mere possibility of forfeitable taint and the wholly conclusory, unsupported allegation that the Florida Condominiums are connected to an SUA are insufficient to survive a motion to dismiss. *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16 ("Absent some specific indication that the [property] is derived from or traceable to illicit activity, the complaint must be dismissed.").[7]

[7] Although the government's conclusory allegations of an SUA taint are supported by the supposed verification of an investigating special agent, even that verification is deficient. Rather than attesting that the allegations of the Complaint are true and correct to the best of the agent's knowledge, the verification states only that the agent "*believe[s]* the allegations contained [in the complaint] to be true." *See* Compl., Verification (emphasis added). An agent's unsupported "belief"—that is, her trust, faith, or confidence in the allegations—is not equal to a verification that the agent knows the allegations to be true. *See United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) ("[T]here are two statements that are essential to a proper verification under § 1746:(i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury"); *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (verification affirming facts as "true and correct as known to [the declarant]" substantially complied with section 1746).

**C. The Forfeiture Complaint Fails to Allege Facts That the Florida Condominiums Were an Instrumentality of Money Laundering.**

The government alternatively alleges that the Florida Condominiums are subject to forfeiture as the instrumentalities of a money laundering offense—that the purchase of the Florida Condominiums was "part of a series of real estate transactions that appear to be designed to conceal the illicit nature of funds." Compl. ¶ 25; *see id.* at ¶ 27 (relying on 18 U.S.C. § 981(a)(1)(A)). However, to allege that Dr. Apte and Dr. Richman conducted a series of real estate transactions in violation of the money laundering statute, thus giving rise to forfeiture, the government must allege facts that establish Dr. Apte and Dr. Richman engaged in the underlying specified unlawful activity, received proceeds of that alleged fraud, and, finally, invested those proceeds in the Florida Condominiums to conceal or disguise the nature, location, source, ownership, and / or the control of the allegedly ill-gotten proceeds. *See* 18 U.S.C. § 1956(a)(B)(i) ("Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction *which in fact involves the proceeds of specified unlawful activit*y . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" violates the laws of the United States) (emphasis added); *United States* v. *Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003) ("A conviction for money laundering [] requires the government to show . . . the property was derived from a specified unlawful activity."). As set forth above, the Complaint fails to clear the first two predicate requirements. The government's alternative theory of forfeiture therefore necessarily fails.

Finally, the Complaint fails to allege facts to support the inference that Dr. Apte and Dr. Richman purchased the Florida Condominiums to conceal and disguise the nature, source and location of the purchase funds. *See* 18 U.S.C. § 1956(a)(B)(i). Referencing other, unassociated financial transfers, the Complaint concludes that the "transaction for the [Florida Condominiums] were [sic] part of a series of real estate transactions that appear to be designed to conceal the illicit nature of funds." Compl. ¶ 25. However, other than referencing that Dr. Apte and Dr. Richman sold their Washington home to move to Florida following uBiome's bankruptcy, the Complaint does not cite to any other real estate transactions whatsoever. Allegations of the sale of one home for another is not,

standing alone, is insufficient to support an otherwise unsubstantiated allegation that Dr. Apte and Dr. Richman engaged in a series of property transfers to launder ill-gotten funds.[8]

## V. CONCLUSION

For the foregoing reasons, claimants Dr. Zachary Apte and Dr. Jessica Richman respectfully move the Court to dismiss the United States' Verified Complaint for Civil Forfeiture *In Rem.*

DATED: July 26, 2021

Respectfully submitted,

By: /s/ W. Douglas Sprague
W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)

**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
*dsprague@cov.com*
*gjung@cov.com*
*rbhatt@cov.com*

By: /s/ Joel M. Hammerman
JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA MAHONEY (*Pro Hac Vice*)
LUIS E. QUIÑONES FERNANDEZ (*Pro Hac Vice*)
YASMIN BEST (Cal. Bar No. 235959)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
1800 Century Park East, Ste. 1500
Los Angeles, California 90067
Telephone: (310) 500-2166
Facsimile: (310) 229-1285
*joel.hammerman@faegredrinker.com*
*josh.mahoney@faegredrinker.com*
*luis.quinones@faegredrinker.com*
*yasmin.best@faegredrinker.com*

[8] Moreover, to the extent the Government's theory is that the Florida Condominiums were used to commit or facilitate or otherwise were involved in money laundering, the Complaint fails to allege a "substantial connection" between the property and that alleged offense, as required by Section 983(c)(3). *See* 18 U.S.C. § 983(c)(3) ("if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was *a substantial connection* between the property and the offense.") (emphasis added).