STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRIS KALTSAS (NYBN 5460902)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6915
      FAX: (415) 436-7234
      chris.kaltsas2@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-CV-04060 CRB |
| Plaintiff, | **OPPOSITION TO CLAIMANTS' MOTION TO DISMISS THE UNITED STATES' VERIFIED COMPLAINT** |
| v. | |
| TWO CONDOMINIUMS LOCATED AT 465 OCEAN DRIVE, UNITS 315 AND 316, MIAMI BEACH, FLORIDA 33139 | DATE: September 2, 2021<br>TIME: 10:00 a.m.<br>COURTROOM: #6, 17th Floor (Zoom) |
| Defendants. | |

OPPOSITION TO MOTION TO DISMISS
21-CV-04060 CRB

# TABLE OF CONTENTS

I.  Introduction ...................................................................................................................1

II. Background ...................................................................................................................1

III. Legal Standard .............................................................................................................3

IV. Argument ......................................................................................................................5

   A.  The Complaint is Verified ........................................................................................6

   B.  The Verified Complaint States Sufficiently Detailed Facts to Support a Reasonable Belief That the Defendant Property is Subject to Forfeiture……………….…………………………………7

      1.  The Proceeds Forfeiture Theory is Sufficiently Detailed .....................................7

         a.   Healthcare Fraud .............................................................................................7

         b.   Securities Fraud ..............................................................................................8

         c.   Wire Fraud .....................................................................................................11

         d.   Proceeds Generally ........................................................................................12

      2.  The Money Laundering Forfeiture Theory is Sufficiently Detailed ...................14

      3.  Leave to Amend is Appropriate if the Count Concludes that the Verified Complaint Requires Additional Detail .........................................................................16

VI. Conclusion .................................................................................................................17

1

# TABLE OF AUTHORITIES

2

3   <u>Cases</u>                                                                                                                    <u>Pages</u>

4   *Ashcroft v. Iqbal*,
5       556 U.S. 662 (2009)……………………………………………………………………4

6   *Bell Atl. Corp. v. Twombly*,
7       550 U.S. 544 (2007)………………………………………………………………..4, 11

8   *Lujan v. Defs. of Wildlife*,
        504 U.S. 555 (1992)………………………………………………………………….4

9   *United States v. Bikundi*,
10      926 F.3d 761 (D.C. Cir. 2019)……………………………………………………...15

11  *United States v. Walton*
        745 F. App'x 15 (9th Cir. 2018)…………………………………………………….15
12
13  *United States v. Mehmood*,
        742 F. App'x 928 (6th Cir. 2018)…………………………………………………...15
14
15  *United States v. Zinnel*,
        725 F. App'x 453 (9th Cir. 2018)……………………………………………………9
16
    *United States v. Aguilar*,
17      782 F.3d 1101 (9th Cir. 2015)……………………………………………………*passim*
18
    *United States v. $133,420.00 in U.S. Currency*,
19      672 F.3d 629 (9th Cir. 2012)……………………………………………………...3
20
    *United States v. Wilkes*,
21      662 F.3d 524 (9th Cir. 2011)…………………………………………………....15

22  *United States v. 475 Martin Lane*,
        545 F.3d 1134 (9th Cir. 2008)………………………………………………………4
23
    *United States v. $493,850.00 in U.S. Currency*,
24      518 F.3d 1159 (9th Cir. 2008)………………………………………………………5
25
    *United States v. Adefehinti*,
26      510 F.3d 319 (D.C. Cir. 2007)……………………………………………………...15
27
    *Belizan v. Hershon*,
28      434 F.3d 579 (D.C. Cir. 2006)………………………………………………………16

    *United States v. 5208 Los Franciscos Way*,
        385 F.3d 1187 (9th Cir. 2004)……………………………………………4, 11, 13

*United States v. Mondragon*,
     313 F.3d 862 (4th Cir. 2002)……………………………………………………………*passim*

*United States v. Owens*,
     159 F.3d 221 (6th Cir. 1998)…………………………………………………………...9

*Schroeder v. McDonald*,
     55 F.3d 454 (9th Cir. 1995)……………………………………………………………6

*United States v. $191,910.00 in U.S. Currency*,
     16 F.3d 1051 (9th Cir. 1994)…………………………………………………………...5

*Cortec Indus., Inc. v. Sun Holding L.P.*,
     949 F.2d 42 (2d Cir. 1991)……………………………………………………………16

*United States v. Cusino*,
     694 F.2d 185 (9th Cir. 1982)…………………………………………………………12

*United States v. Zachary Apte and Jessica Richman*,
     Case No. 21-CR-0116 (N.D. Cal. Mar. 18, 2021)…………………………………...1, 3

*SEC v. Richman, et al.*,
     Case No. 21-CV-01911 (N.D. Cal. Mar. 18, 2021)…………………………………………3

*Medina-Rodriguez v. $3,072,266.59 in U.S. Currency*,
     471 F. Supp. 3d 465 (D.P.R. 2021)…………………………………………………...13

*United States v. Chang*,
     2020 WL 5702131 (N.D. Cal. Sept. 24, 2020)………………………………………15

*United States v. Real Prop. Known as 1 W. Century Dr. #23B, L.A., Cal.*,
     2018 WL 4599837 (S.D. Tex. June 22, 2018)………………………………………...13

*United States v. Real Prop. Located in Brentwood, Cal.*,
     2016 WL 11121402 (C.D. Cal. Mar. 15, 2016)………………………………………...4

*United States v. All Assets Held in Account No. 80020796*,
     83 F. Supp. 3d 360 (D.D.C. 2015)……………………………………………………14

*United States v. Sum of $70,990,605*,
     4 F. Supp. 3d 189 (D.D.C. 2014)………………………………………………11, 13, 16

*United States v. One Gulfstream G-V Jet Aircraft*,
     941 F. Supp. 2d 1 (D.D.C. 2013)…………………………………………………....3, 10, 11

*United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*,
     2012 WL 8455336 (C.D. Cal. Apr. 12, 2012)...………………………………………10

*United States v. $1,399,313.74 in U.S. Currency,*
    591 F. Supp. 2d 365 (S.D.N.Y. 2008)…………………………………………………………13, 16

*United States v. 8 Gilcrease Lane, Quincy, Fla. 32351,*
    587 F. Supp. 2d 133 (D.D.C. 2008)…………………………………………………………6

*United States v. $50,040 in U.S. Currency,*
    2007 WL 1176631 (N.D. Cal. Apr. 20, 2007)…………………………………………3, 5

**Statutes and Regulations**                                                                                 **Pages**

15 U.S.C. §§ 78j(b), 78ff………………………………………………………………………..7

17 C.F.R. § 240.10b-5………………………………………………………………………..7

18 U.S.C. § 981(a)(1)(A)…………………………………………………………………..7, 14

18 U.S.C. § 981(a)(1)(C)…………………………………………………………………..7, 13

18 U.S.C. § 985(c)………………………………………………………………………………3

18 U.S.C. § 1343……………………………………………………………………………7, 12

18 U.S.C. § 1347………………………………………………………………………………..7

18 U.S.C. § 1956(a)(1)(B)(i)………………………………………………………………..14

18 U.S.C. § 1956(c)(7)(A)…………………………………………………………………7, 14

18 U.S.C. § 1956(c)(7)(F)…………………………………………………………………7, 14

18 U.S.C. § 1961(1)………………………………………………………………………7, 14

28 U.S.C. § 1746………………………………………………………………………………6

**Other Authorities**                                                                                     **Pages**

Admir. L.R. 1-2………………………………………………………………………………6

Admir. L.R. 2-1………………………………………………………………………………6

Fed. R. Civ. P. 12……………………………………………………………………………3

Fed. R. Civ. P. 15……………………………………………………………………………16

Fed. R. Civ. P. Supp. E……………………………………………………………………3, 4

Fed. R. Civ. P. Supp. G…………………………………………………………………*passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       Claimants Zachary Apte ("APTE"), Jessica Richman ("RICHMAN"), and 465 Ocean Land

4   Trust, represented by trustee Gabriel Ceriotti ("the Trust") (collectively, "Claimants"), join in a motion

5   to dismiss the Verified Complaint for Civil Forfeiture *In Rem* ("the Verified Complaint"). Claimants'

6   motion lacks any merit. It appears to be a thinly veiled effort to elicit discovery from the government in

7   violation of the Local Civil Rules of Procedure; their demands would require the government to provide

8   discovery far beyond what is required at this juncture. For the reasons stated below, the Verified

9   Complaint satisfies the requirements set forth in Supplemental Rule G of the Federal Rules of Civil

10  Procedure, which governs civil forfeiture proceedings. The Court should accordingly deny Claimants'

11  motion. If, however, the Court concludes that the Verified Complaint requires amendment to adhere to

12  the requirements set forth in Supplemental Rule G, the Court should grant the government leave to

13  amend the Verified Complaint.

14

## II.    BACKGROUND

15      APTE and RICHMAN were the co-founders of uBiome, Inc. ("uBiome"), a company that

16  purported to test patients' "microbiomes" with the ostensible purpose of allowing consumers to

17  understand the bacterial composition of their various organ systems. Compl. ¶¶ 8-9, Indictment ¶¶ 17.[1]

18  RICHMAN served as uBiome's Chief Executive Officer, whereas APTE served as uBiome's Chief

19  Technology Officer until approximately May 2018, when APTE and RICHMAN began serving as co-

20  Chief Executive Officers. Indictment ¶¶ 3-4. Although uBiome initially offered its products to

21  consumers on the open market, it eventually began offering its products to medical professionals and

22  patients for purposes of clinical medical diagnosis. Indictment ¶ 18.

23      APTE's and RICHMAN's decision to launch uBiome's products for purposes of establishing

24  clinical diagnoses preceded various actions designed to defraud healthcare providers, healthcare benefit

25

26      _____

27      [1] Citations to the record in this case are referenced by their respective docket entries ("Dkt. No."), with the exception of the Verified Complaint, which will be referenced as "Compl.", and Claimant's motion, which will be referenced as "Mot." Any references to an "Indictment" refer to Dkt. No. 1 in *United States v. Zachary Apte and Jessica Richman*, Case No. 21-CR-0116 (N.D. Cal. Mar. 18, 2021).

28

1    programs, and uBiome investors. First, APTE and RICHMAN submitted reimbursement claims for

2    clinical test results on samples that had already been analyzed with a consumer test or older clinical test;

3    in other words, they fraudulently submitted multiple reimbursement requests for the same samples.

4    Compl. ¶13. APTE and RICHMAN also used a "captive network" of healthcare professionals to

5    administer and approve tests. *Id.* This alone was problematic, but even more so because APTE and

6    RICHMAN intentionally provided those professionals with limited and misleading information in a

7    manner designed to facilitate approval of the requested uBiome tests. *Id* uBiome also fraudulently

8    submitted reimbursement requests for tests that had not been fully approved under applicable medical

9    standards; manipulated dates of service to maximize reimbursements; failed to collect patient

10   responsibility payments in violation of law and policies of healthcare benefits programs; and used the

11   identities of doctors to approve tests without those doctors' permission. *Id.*

12        uBiome, through APTE and RICHMAN, also raised several rounds of funding with outside

13   investors. *See* Compl. ¶¶ 14-15. In doing so, however, APTE and RICHMAN made several

14   misrepresentations to investors and deceived them in various material ways, including as to the success

15   of uBiome's collection of healthcare benefit reimbursement rates and revenues; the purported uses and

16   clinical acceptance of uBiome's tests in the medical community; and the legality of uBiome's business

17   practices, especially concerning uBiome's approach (or lack thereof) in collecting patient responsibility

18   payments, the illegal use of a captive network of medical professionals to obtain orders for tests, and the

19   marketing and use of "test upgrades." *Id.* These investments ultimately funded APTE's and

20   RICHMAN's lifestyles, including the purchase of real estate. Compl. ¶¶ 23. These purchases included

21   the purchase of a home in Camas, Washington on or about September 4, 2019. Compl. ¶ 21; Indictment

22   ¶ 90. That property was subsequently sold on January 28, 2020, and the proceeds from the sale were

23   used to partially purchase two condominiums located at 465 Ocean Drive, Miami Beach, Florida 33139

24   (Units 315 and 316) ("the Defendant Properties"). *Id.* The remaining funds used to purchase the

25   Defendant Properties were spread over thirteen separate transfers from eight separate financial accounts

26   accounts associated with APTE and RICHMAN at numerous banks and other financial institutions.

27   Compl. ¶ 22. These transfers culminated in the purchase of the Defendant Properties. Compl. ¶ 23.

28        The government filed the instant Verified Complaint for Civil Forfeiture *In Rem* on May 27,

2021. Dkt. No. 1. APTE and RICHMAN filed their respective claims on July 6, 2021, and the Trust filed

its claim on July 8, 2021. Dkt. Nos. 15, 17-18. In accordance with the rules governing civil forfeiture of

real property, the government filed its complaint; posted notice of the complaint on the Defendant

Property; and served notice and a copy of the complaint on the owner through counsel. *See* Fed. R. Civ.

P. Supp. G(3); 18 U.S.C. § 985(c). Each Claimant timely filed their respective motions in accordance

with Supplemental Rule of Civil Procedure G(5)(b). APTE's and RICHMAN's activities with respect to

their management of uBiome also form the basis for two related actions before the Court, including one

criminal action against APTE and RICHMAN, as well as a suit brought by the U.S. Securities and

Exchange Commission. *See United States v. Zachary Apte and Jessica Richman*, Case No. 21-CR-0116

(N.D. Cal. Mar. 18, 2021); *SEC v. Richman, et al.*, Case No. 21-CV-01911 (N.D. Cal. Mar. 18, 2021).

The criminal indictment contains forfeiture allegations that seek the Defendant Property in addition to a

forfeiture money judgment. Indictment ¶¶ 91-95.

## III.    LEGAL STANDARD

The procedural aspects of civil forfeiture actions are generally governed by Supplemental Rule G

of the Federal Rules of Civil Procedure; to the extent that Rule G does not address issues that may arise,

Supplemental Rules C and E apply, along with the other Federal Rules of Civil Procedure. Fed. R. Civ.

P. Supp. G(1); *see also United States v. $50,040 in U.S. Currency*, 2007 WL 1176631, at *2 (N.D. Cal.

Apr. 20, 2007). The sufficiency of a civil forfeiture complaint is governed by the provisions articulated

in Supplemental Rule G(2). Fed. R. Civ. P. Supp. G(8)(b)(ii). As with all civil complaints, the

allegations in a civil forfeiture complaint are taken as true for purposes of a motion to dismiss, and all

allegations must be construed in the light most favorable to the government as the nonmoving party.

*$50,040*, 2007 WL 1176631, at *2 (citation omitted). Moreover, the government "must be afforded

every favorable inference that may be drawn from the allegations of fact set forth in the complaint."

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (citations

omitted). Claimants with standing to contest civil forfeiture proceedings may move to dismiss a

complaint in accordance with Federal Rule of Civil Procedure 12.[2]  Fed. R. Civ. P. Supp. G(8)(b)(i).

---

[2] Claimants may demonstrate statutory standing in civil forfeiture cases by "showing that they
have 'a colorable interest in the property,' . . . which includes an ownership interest or a possessory
interest[.]" *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012)

Generally, to survive a motion to dismiss, a civil complaint must articulate sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims articulated in complaints are sufficient if "the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable;" factual allegations accordingly need not be detailed but must provide more than bare legal assertions. *United States v. Real Prop. Located in Brentwood, Cal.*, 2016 WL 11121402, at *2 (C.D. Cal. Mar. 15, 2016) (quoting *Twombly*, 550 U.S. at 555).

Supplemental Rule G(2) provides a "slightly higher pleading standard" for complaints for civil forfeiture *in rem* than that provided for standard civil complaints in *Twombly* and *Iqbal*. *Id.* (citing *United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015)). Specifically, civil forfeiture complaints must adhere to the following requirements:

> The complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

The Ninth Circuit has noted that few courts have interpreted Supplemental Rule G(2)(f)(6), but that those that have interpreted it read it in conjunction with Supplemental Rule E(2)(a), per the guidance provided in the advisory notes to Supplemental Rule G. *Aguilar*, 782 F.3d at 1108. Supplemental Rule E(2)(a) specifically provides that complaints must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Id.*

Notwithstanding Claimants' daunting recitation of the standard for motions to dismiss in

---

(quoting *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004)). Article III standing may be demonstrated by establishing "that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision." *Id.* at 637 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). As statutory standing is demonstrated through "a claimant's unequivocal assertion of an ownership interest" in the Defendant Property at the motion to dismiss stage, the government recognizes that the Claimants have standing for purposes of their respective motions to dismiss only. *See id.* (citing *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008)).

forfeiture proceedings, the Supplemental Rules "do[] not articulate an onerous standard." *Id.* (citing *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002)). Although "notice pleading" does not suffice for civil forfeiture complaints, the standard is nevertheless a "low bar." *Id.* at 1109 (quoting *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994), *superseded on other grounds*). A civil forfeiture complaint must merely "state[ ] the circumstances giving rise to the forfeiture claim with sufficient particularity that [the claimant] [can] commence[ ] a meaningful investigation of the facts and draft[ ] a responsive pleading," and "permit a reasonable belief for pleading purposes that [the property in question] ... [is] subject to forfeiture." *Id.* at 1108-09 (quoting *Mondragon*, 313 F.3d at 866-67).

The standard articulated in *Mondragon* and adopted in *Aguilar* followed from the passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). *See Mondragon*, 313 F.3d at 865; *$50,040*, 2007 WL 1176631, at *2. Prior to CAFRA, courts nationwide interpreted the standard provided in Supplemental Rule E(a)(2) as probable cause. *Mondragon*, 313 F.3d at 865; *$50,040*, 2007 WL 1176631, at *2. The Ninth Circuit continues to hold that the government must "show probable cause to institute a forfeiture action." *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1166 (9th Cir. 2008). This Court, however, has harmonized the two concepts and has held that, for all intents and purposes, the "decision to omit the words 'probable cause' did not change the standard for sufficiency. Whether stated as a 'reasonable belief that the property is subject to forfeiture' or a 'reasonable belief that the government will be able to meet its burden of proof at trial,' the ultimate meaning is identical." *$50,040*, 2007 WL 1176631, at *2.

For the reasons described below, the Verified Complaint meets this standard without difficulty.

## IV.    ARGUMENT

As noted above, a complaint for civil forfeiture *in rem* is generally considered sufficient if it meets the requirements set forth in Supplemental Rule G(2). Claimants only appear to contest two of the requirements articulated therein: that the complaint was properly verified, and that the complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(2)(f). The government addresses the two issues presented by Claimants *seriatim*.

1

### A.      The Complaint is Verified

2        Preliminarily, the government must address Claimants' contention that the verification

3 accompanying the complaint for civil forfeiture is deficient because the law enforcement officer

4 verifying the complaint attested that they "*believe*[d] the allegations contained [in the complaint] to be

5 true." Mot. at 11 n.7. Claimant's argument is utterly lacking in merit. Claimants need look no further

6 than the dictionary (or their common sense) to conclude that a belief that a fact is true is logically

7 necessary to claim or attest that the fact is true. Definitions for the word "believe" include "to regard as

8 right or true" or "to accept." Merriam-Webster Online Dictionary and Thesaurus, *Believe* (2021). The

9 word "belief," the noun attributed to the verb "believe," is defined, at least in part, as "conviction of the

10 truth of some statement or the reality of some being or phenomenon especially when based on

11 examination of evidence." Merriam-Webster Online Dictionary and Thesaurus, *Belief* (2021).

12       Indeed, the verifications discussed in the cases Claimants cite actually use or reference "belief,"

13 and those verifications were approved by the respective courts adjudicating that issue. *See Schroeder v.*

14 *McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (approving a verification that provided that "the facts

15 stated in the ... complaint [are] true and correct *as known to me*," *i.e.*, as believed by the individual

16 verifying the complaint (emphasis added)); *United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 587

17 F. Supp. 2d 133, 139 (D.D.C. 2008) (approving a verification in which the attestation provides

18 "everything represented [in the Complaint] is true and correct to *the best of my knowledge and belief*"

19 (emphasis added)). The Admiralty and Maritime Local Rules also provide that "[v]erification of every

20 pleading, statement of right or interest, or other paper as required by Fed. R. Civ. P. Supp. B, C, D, and

21 G shall be upon oath or solemn affirmation, *or* in the form provided by 28 U.S.C. § 1746." Admir. L.R.

22 2-1 (emphasis added).[3] The Local Rules accordingly also provide that verification merely need to be

23 upon oath or solemn affirmation, and not necessarily in the exact manner provided for in 28 U.S.C.

24 § 1746.

25       The verification is sufficient, and the Court should reject Claimants' argument.

26

27

28
_____

[3] The Northern District of California's Local Admiralty and Maritime Rules apply "to statutory condemnation and forfeiture proceedings analogous to maritime actions *in rem*" governed by Supplemental Rule G. Admir. L.R. 1-2.

**B.     The Verified Complaint States Sufficiently Detailed Facts to Support a Reasonable Belief That the Defendant Property is Subject to Forfeiture**

The bulk of Claimants' motion is devoted to the sufficiency of the factual basis for the Verified Complaint. The government will address Claimants' arguments with respect to its claims: one claim under Title 18, United States Code, Section 981(a)(1)(C) ("Proceeds Forfeiture Theory"); and one claim under Title 18, United States Code, Section 981(a)(1)(A) ("Money Laundering Forfeiture Theory"). The government will address each claim in turn.

**1.     The Proceeds Forfeiture Theory is Sufficiently Detailed**

"Title 18, United States Code, Section 981(a)(1)(C) subjects any property, real or personal, which constitutes or is derived from proceeds traceable to proceeds of any specified unlawful activity to forfeiture to the United States." Compl. ¶ 28. Specified unlawful activities include, but are not limited to, violations of Title 18, United States Code, Section 1343 (wire fraud); Title 18, United States Code, Section 1347 (healthcare fraud); and Title 15, United States Code, Sections 78j(b) and 78ff, alongside Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud). *See* 18 U.S.C. § 1956(c)(7)(A) (cross referencing 18 U.S.C. § 1961(1)), 1956(c)(7)(F); *see also* Compl. ¶¶ 34-36. The elements of the crimes constituting specified unlawful activities for purposes of the Proceeds Forfeiture Theory are defined in the Verified Complaint. Compl. ¶¶ 31-33.

Claimants assert that the Verified Complaint fails to allege that APTE or RICHMAN engaged in a specified unlawful activity. Mot. at 4-11. Claimants specifically contend that the Verified Complaint fails to adequately allege any healthcare fraud, securities fraud, or wire fraud activity, and that there is no allegation that APTE or RICHMAN profited from these activities. Taking all facts and reasonable inferences in favor of the government, Claimants' contentions fail with respect to each category of activity.

**a.     Healthcare Fraud**

Claimants assert that the Verified Complaint fails to allege that APTE and RICHMAN never received funds from uBiome as part of their participation in the healthcare fraud scheme. Mot. at 5-6. The Verified Complaint, however, adequately alleges that APTE and RICHMAN did obtain funds from their participation in a healthcare fraud scheme and subsequently used those funds in a manner

1    culminating in the purchase of the Defendant Property. Preliminarily, Claimants' argument assumes that

2    the Verified Complaint adequately alleges that APTE and RICHMAN actually participated in healthcare

3    fraud activity. Those activities are indeed clear from the face of the Verified Complaint. As noted

4    therein, APTE and RICHMAN acted with the intent to induce "health insurance providers to pay money

5    to uBiome, all in order to obtain funds for the operations of uBiome," in a manner that would help them

6    convince investors "that health care providers' orders for uBiome's clinical tests were routinely

7    reimbursed by health insurance providers, and to project the appearance to investors that such

8    reimbursable orders were increasing on a monthly basis." Compl. ¶ 12. The Verified Complaint goes

9    further and specifically defines those practices, which include the fraudulent submission of used samples

10   for testing to obtain additional reimbursements; utilizing a captive network of doctors who were given

11   misleading information to approve tests; masquerading their tests as medically approved when they had

12   not fully been vetted; manipulating dates of service to maximize billings; purposefully skirting their

13   patient responsibility requirements; and using falsified documents containing doctors' identifying

14   information without permission. Compl. ¶ 13.

15          With respect to the proceeds of those activities, the Verified Complaint clearly indicates that the

16   proceeds of the healthcare fraud scheme, which first flowed to uBiome, were funneled "from the

17   uBiome account to [APTE's and RICHMAN's] personal accounts." Compl. ¶ 17. The Verified

18   Complaint subsequently explains the transfers of proceeds from investors in connection with the alleged

19   securities fraud, which is detailed further below, as well as transfers from said personal accounts for

20   purposes of purchasing assets which would eventually provide the financing for the Defendant Property.

21   Compl. ¶¶ 18-23. In sum, the allegations outline the activities constituting healthcare fraud; where the

22   funds from the healthcare fraud went, *i.e.*, to APTE's and RICHMAN's bank accounts via uBiome; and

23   how they were eventually used to purchase the Defendant Property. The allegations in the Verified

24   Complaint thus provide for a "reasonable belief" that the Defendant Property is subject to forfeiture

25   under the Proceeds Forfeiture Theory with healthcare fraud as a predicate specified unlawful activity.

26   *See* Fed. R. Civ. P. Supp. G(2)(f).

27                    **b.    Securities Fraud**

28          Claimants subsequently argue that the Verified Complaint failed to allege any facts tending to

1    prove the elements of a securities fraud claim. Mot. at 6-7. Specifically, Claimants assert that the

2    Verified Complaint fails to allege any use of instrumentalities of interstate commerce to engage in the

3    securities fraud activity; and that the substantive aspects of the fraud allegations are "too vague and

4    conclusory." *Id.* Claimants' protestations miss the mark.

5         First, the Verified Complaint specifically integrates instrumentalities of interstate commerce in

6    its discussion of securities fraud activity. The Verified Complaint makes direct reference to transfers

7    between and among financial accounts involving wrongfully obtained investments from investors.

8    Compl. ¶¶ 17-19. The facts alleged with respect to the transfer of funds between financial accounts

9    clearly establish the interstate commerce element of securities fraud when taking all facts and inferences

10   in favor of the government. These transfers satisfy the interstate commerce transaction as courts have

11   held that transfers, whether as wires or movement of funds among bank accounts, necessarily implicate

12   interstate commerce. *See, e.g.*, *United States v. Zinnel*, 725 F. App'x 453, 460 (9th Cir. 2018)

13   (explaining that a conviction for money laundering survives the requirement that the transaction affect

14   interstate commerce if the jury could have inferred that a transaction occurred using a financial

15   institution insured by the Federal Deposit Insurance Corporation); *United States v. Owens*, 159 F.3d 221,

16   226 (6th Cir. 1998) (concluding that using a bank that engages in activities affecting interstate

17   commerce in any manner is sufficient for purposes of establishing that a transaction affected interstate

18   commerce). This element is not an onerous bar. When accorded every due inference, the Verified

19   Complaint clearly meets this element.

20        Second, the allegations concerning securities fraud are neither "vague" nor "conclusory." Mot. at

21   7. Claimants fail to consider the allegations in the Verified Complaint as a whole and attempt to segment

22   the Verified Complaint into discrete parts. The Verified Complaint, however, provides more than

23   enough information when read in its entirety to allow Claimants to "commence[ ] a meaningful

24   investigation of the facts and draft[ ] a responsive pleading," and "permit a reasonable belief for

25   pleading purposes that [the property in question] ... [is] subject to forfeiture." *Aguilar*, 782 F.3d at 1108-

26   09 (quoting *Mondragon*, 313 F.3d at 866-67). As Claimants note, paragraph fifteen of the Verified

27   Complaint provides that APTE and RICHMAN made misleading statements and omissions concerning

28   uBiome's business activities, including, but not limited to,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the success of uBiome's business model in terms of revenues and reimbursement rates; the threats to future revenues represented by uBiome's failure to collect patient responsibility, marketing of upgrades, and reliance on the ECCN to generate orders; and the lack of clinical utility and acceptance in the medical community of uBiome's tests.

Compl. ¶ 15. As noted in the preceding two paragraphs of the Verified Complaint, each of these activities were part of APTE's and RICHMAN's healthcare fraud scheme and communicated to investors as part of the securities fraud and wire fraud schemes. Compl. ¶ 13.

Claimants nevertheless assert that these two paragraphs are insufficient for the government to meet its standard in a motion to dismiss the Verified Complaint. Mot. at 7. But the caselaw Claimants cite cuts directly against that argument. In *United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*, the Court concluded that the allegations in the Verified Complaint in that case were "vague" and "generalized." 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012). The vagueness of the complaint in *Bad Tour Glove* case was, however, in large part credited to the complaint's lack of focus on the bad actor who was alleged to have used the proceeds of illegal activity to purchase the property subject to forfeiture. Instead, the activity was ascribed to the "Inner Circle," an organization with which the defendant was affiliated; the complaint in that case made little reference to the individual alleged to have commit bad acts. *Id.* at *3-5. The court accordingly concluded that there was no basis upon which to believe that the defendant property was derived from the proceeds of a specified unlawful activity. *Id.*

The other case Claimants cite was based on the same facts as the *Bad Tour Glove* Case. *See One Gulfstream,* 941 F. Supp. 2d at 5-6. The Court took similar issue with the allegations in that complaint: there were no allegations with respect to "what companies were victim to this scheme, or when this occurred, or which members of the Inner Circle were behind the acts." *Id.* at 15. Many of the allegations did not "even give rise to an inference of illegal activity," or mention the purported bad actor in any capacity. *Id.* There were apparently allegations in which the purported bad actor was not mentioned or referenced at all, or others simply alleging that the bad actor had amassed wealth—nothing more. *Id.* at 15-16. The court noted that, in that case, "the claimants would find it difficult to know where to begin their investigation, what individuals to interview, or what documents to review." *Id.* at 16 (citing

1    *Mondragon*, 313 F.3d at 864).

2          The instant case is closer to *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189 (D.D.C.

3    2014). There, the court specifically contrasted the facts of that case to *One Gulfstream* and concluded

4    that the government had met its burden in demonstrating the sufficiency of the Verified Complaint. *Id.* at

5    203. The court noted that, in *One Gulfstream*, the government "failed to plead facts showing that the

6    claimant's wealth was derived from an illegal source." *Id.* (citing *One Gulfstream*, 941 F. Supp. 2d at

7    15-16). In *$70,990,605*, however, the government plead more than "labels and conclusions." *Id.* (quoting

8    *Twombly*, 550 U.S. at 555). The government specifically "identif[ied] dates and amounts," and

9    "explain[ed] the claimants' actions precipitating that seizure." *Id.* The government did the same here

10   with respect to each of the allegations by identifying the main actors as APTE and RICHMAN,

11   explaining the actions underlying the allegations of specified unlawful activity, and the transactions

12   culminating in the purchase of the Defendant Property.

13         To the extent Claimants demand more information relating to securities fraud, they will be able

14   to receive said information in discovery. Indeed, "the government is not required to prove its case

15   simply to get in the courthouse door." *5208 Los Franciscos Way*, 385 F.3d at 1193. Although the

16   government has not provided everything Claimants wish to know at this juncture, it need not do so at

17   this early stage of litigation. The Verified Complaint provides enough detail for Claimants to

18   preliminarily investigate the allegations discussed therein.

19                         **c.    Wire Fraud**

20         Claimants next assert that the Verified Complaint's wire fraud allegation fails for similar reasons

21   as the allegations relating to healthcare and securities fraud. Claimants specifically assert that they lack

22   sufficient notice of "(1) the nature and purpose of the scheme, (2) the statements and omissions carried

23   out in furtherance of the scheme, and (3) the interstate or foreign wire communication(s) used to carry

24   out or attempt to carry out an essential part of the scheme" with respect to wire fraud. Mot. at 5.

25   Claimants' argument, however, fails in two familiar respects: it demands more than the Verified

26   Complaint is required to provide, and it ignores the logical inferences that can be drawn from the

27   Verified Complaint.

28

As noted above, the government's burden at this stage of the proceedings is to "state[ ] the circumstances giving rise to the forfeiture claim with sufficient particularity that [the claimant] [can] commence[ ] a meaningful investigation of the facts and draft[ ] a responsive pleading," and "permit a reasonable belief for pleading purposes that [the property in question] ... [is] subject to forfeiture." *Aguilar*, 782 F.3d at 1108-09 (quoting *Mondragon*, 313 F.3d at 866-67). This is not an onerous bar, and the Verified Complaint's allegations are more than sufficient to meet this standard.

Preliminarily, the wire fraud statute:

> prohibits a person who, having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, from transmitting, or causing the transmission of, any writing, sign, signal, picture, or sound by means of wire, radio, or television communication in interstate or foreign commerce for the purpose of executing said scheme or artifice.

Compl. ¶ 33 (citing 18 U.S.C. § 1343). As noted throughout the Verified Complaint, APTE and RICHMAN caused several transfers of funds to be made in furtherance of their scheme to defraud various healthcare benefit programs and investors. Transfers of funds constitute wires for purposes of the wire fraud statute. *See United States v. Cusino*, 694 F.2d 185, 187 (9th Cir. 1982). APTE's and RICHMAN's wire fraud scheme encompasses the healthcare and securities fraud schemes described above and includes the purchase of the Defendant Property for their personal benefit at the expense of healthcare benefit programs and investors. The Verified Complaint also explains the paths of the various transfers made to APTE and RICHMAN in furtherance of their schemes, including the transfer of funds to uBiome's accounts from healthcare benefit programs and investors; transfers of funds from investors to APTE's and RICHMAN's personal financial accounts; and the funneling of funds from uBiome to APTE and RICHMAN's accounts to fund the purchase of real estate for personal use. Compl. ¶¶ 12, 16-19. The Verified Complaint as a whole alleges several iterations of wire fraud and is more than sufficient for Claimants to undertake an investigation into the allegations discussed therein. The Court should accordingly deny Claimants' motion to dismiss.

### d.    Proceeds Generally

Claimants subsequently contend that the Proceeds Forfeiture Theory is fatally flawed in its entirety because the Verified Complaint failed to allege any tie between the Defendant Property and the

proceeds of the schemes described therein. Claimants' arguments are without merit. The Verified

Complaint clearly alleges that, beginning in 2016, "APTE and RICHMAN began funneling funds from

the uBiome account to their personal accounts." Compl. ¶ 17. Prior to that, the Verified Complaint

explained how uBiome obtained money through fraudulent means, including wire fraud, healthcare

fraud, and securities fraud schemes. Compl. ¶¶ 12-15. The Verified Complaint also explains how the

proceeds of these schemes culminated in the purchase of the Defendant Property, via the purchase and

sale of a real property in Camas, Washington. Compl. ¶¶ 17-23. The Verified Complaint notes that these

funds "were derived, in substantial part, from funds traceable to the specified unlawful activities"

described previously in the Verified Complaint. Compl. ¶ 23. This is not a case where the Verified

Complaint generally refers to criminal activity and infers, with no factual basis, that the Defendant

Property constitutes the proceeds of crime. *See, e.g.*, *United States v. $1,399,313.74 in U.S. Currency*,

591 F. Supp. 2d 365, 373-74 (S.D.N.Y. 2008) (complaint dismissed where there was no allegation that a

bad actor engaged in specified unlawful activity, but mere speculation that property *could* be tied to a

specified unlawful activity). The complaint here provides Claimants with ample facts upon which to

initiate an investigation.

        Claimants' primary concern regarding the Proceeds Forfeiture Theory is that the Verified

Complaint does not provide all of the tracing necessary to establish the forfeitability of the Defendant

Property. Claimants' argument, however, conflates several principles at issue in the context of a motion

to dismiss a civil forfeiture complaint. As noted above, the government need not prove the entirety of its

case in its Verified Complaint "simply to get in the courthouse door." *5208 Los Franciscos Way*, 385

F.3d at 1193. To that end, civil forfeiture complaints need not "identify specific property involved in the

offense (for example, that the exact dollars that went into the claimants' account from the fraud were the

exact dollars that were seized)." *$70,990,605*, 4 F. Supp. 3d at 202. Rather, the government must show

that the assets are "traceable to a [specified] violation" in far broader terms. *Id.* (quoting 18 U.S.C.

§ 981(a)(1)(C)). Simply put, "tracing is not at issue at the motion to dismiss stage." *Aguilar*, 782 F.3d at

1109. *See also Medina-Rodriguez v. $3,072,266.59 in U.S. Currency*, 471 F. Supp. 3d 465, 481 (D.P.R.

2021) (noting that the government need not demonstrate a full tracing analysis in its complaint, and that

traceability is a matter to be resolved at trial); *United States v. Real Prop. Known as 1 W. Century Dr.*

*#23B, L.A., Cal.*, 2018 WL 4599837, at *4 (S.D. Tex. June 22, 2018) (concluding that a complaint without a tracing analysis is sufficient for purposes of surviving a motion to dismiss); *United States v. All Assets Held in Account No. 80020796*, 83 F. Supp. 3d 360, 379 (D.D.C. 2015) (providing that "the Government is not required to demonstrate full tracing of all account activity" as the "pleading standard for tracing funds in a civil forfeiture complaint is not exacting").

Claimants' protestations that the Verified Complaint has provided them with nothing rings hollow in light of the detailed facts the Verified Complaint offers. The Verified Complaint provides specific instances of fraudulent conduct, a timeline, and specific transactions, in addition to an allegation that the fraudulent conduct discussed therein is the specified unlawful activity forming the basis for the Proceeds Forfeiture Theory. To the extent Claimants believe that there is any inference that APTE and RICHMAN purchased the Camas property with legitimate funds, that is something Claimants are free to explore at trial or on a motion for summary judgment, after discovery begins. The Verified Complaint, however, alleges a viable Proceeds Forfeiture Theory and is more than sufficient to survive a Claimants' motion to dismiss.

### 2.    The Money Laundering Forfeiture Theory is Sufficiently Detailed

Claimants next argue that the Money Laundering Forfeiture Theory is fatally flawed because the Verified Complaint fails to establish that APTE and RICHMAN (1) engaged in specified unlawful activities; and (2) used the proceeds of those activities to conceal the nature, location, source, ownership, or control of the proceeds of said specified unlawful activities. Mot. at 12; *see also* 18 U.S.C. § 1956(a)(1)(B)(i). These arguments, like the others, are without merit.

Preliminarily, "Title 18, United States Code, Section 981(a)(1)(A) subjects any property, real or personal, involved in a transaction in violation of Title 18, United States Code, Section 1956 (money laundering) to forfeiture to the United States." Compl. ¶ 27. As described above, the Verified Complaint adequately alleges that APTE and RICHMAN engaged in specified unlawful activities giving rise to money laundering, specifically, wire fraud, healthcare fraud, and securities fraud schemes. *See, e.g.*, Compl. ¶¶ 12-13, 15; *see also* 18 U.S.C. §§ 1956(c)(7), 1961(1) (discussing what offenses constitute specified unlawful activities). The Verified Complaint further alleges that APTE and RICHMAN both funneled money from uBiome's accounts and received ill-gotten gains into their personal bank accounts.

Compl. ¶¶ 16-17. Claimants' assertions with respect to the specified unlawful activities and accompanying proceeds are lacking for the same reason as their arguments concerning the Proceeds Forfeiture Theory—the allegations are more than sufficient to establish a reasonable belief that the Defendant Property is subject to forfeiture.

Claimants' other argument concerning the Money Laundering Forfeiture Theory is that the Verified Complaint fails to allege that the purpose of the series of the real estate transactions described therein was to conceal the nature of the proceeds of the specified unlawful activities. Mot. at 12-13. This, too, is misplaced. Preliminarily, transactions that are designed to conceal the nature or source of property may, and typically do, have multiple purposes. *See United States v. Mehmood*, 742 F. App'x 928, 935-36 (6th Cir. 2018) (concluding that payments for kickbacks were routed, "at least partially," to conceal the nature of the funds based on factual inferences, even if the funds were used for other purposes); *United States v. Chang*, No. 16-CR-0047 EJD, 2020 WL 5702131, at *8-9 (N.D. Cal. Sept. 24, 2020) (citing *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011)) (concluding that money was being transferred through charity accounts both to pay defendant's personal expenses *and* to cleanse the taint from the money being transferred).

Implicit in those holdings is that the purpose of concealment may be inferred from the circumstances surrounding money laundering transactions. Indeed, in *United States v. Walton*, the Ninth Circuit affirmed a money laundering conspiracy conviction on the basis that the defendant had "used a method typically employed by money launderers to conceal the source of funds." 745 F. App'x 15, 16 (9th Cir. 2018). The D.C. Circuit has also held that money launderers use several standard techniques to conceal the source, nature, or location of illegally-obtained funds: "'funneling' of 'illegal funds through various fictitious business accounts' is a hallmark of money laundering." *United States v. Bikundi*, 926 F.3d 761, 784 (D.C. Cir. 2019) (quoting *United States v. Adefehinti*, 510 F.3d 319, 323 (D.C. Cir. 2007)). Other techniques include "convoluted financial transactions" and "inter-company transfers with no clear purpose." *Id.* (internal quotation marks omitted); *see also Wilkes*, 662 F.3d at 545-56 (quoting *Adefehinti*, 510 F.3d at 324) (referencing "convoluted transactions" as a hallmark of concealment money laundering).

The Verified Complaint explicitly alleges several of the "hallmarks of money laundering"

described in *Bikundi*, *Wilkes*, and *Adefehinti*. RICHMAN and APTE, for example, used a uBiome business account as a "funnel" to their own respective personal accounts. Compl. ¶ 17. RICHMAN and APTE subsequently formed a series of trusts and used the first of those trusts to purchase property in October 2017 with funds they derived from specified unlawful activities, *i.e.*, wire fraud, healthcare fraud, and securities fraud. Compl. ¶¶ 20-21. The property later was sold and used as partial payment for the Defendant Property; the remaining funds were transferred from *eight separate financial accounts in thirteen transactions*, through trusts and the use of an intermediary. Compl. ¶¶ 22-23. Activity after APTE and RICHMAN left the country also indicates that they continued their money laundering activities, including directing the transfer of money through intermediary individuals for use in construction on the Defendant Properties. Compl. ¶ 24. These facts are more than enough to allow Claimants to "commence[ ] a meaningful investigation of the facts and draft[ ] a responsive pleading," and "permit a reasonable belief for pleading purposes that [the property in question] ... [is] subject to forfeiture." *Aguilar*, 782 F.3d at 1108-09 (quoting *Mondragon*, 313 F.3d at 866-67).

### 3.     Leave to Amend is Appropriate if the Court Concludes that the Verified Complaint Requires Additional Detail

The Court should deny Claimants' motion to dismiss. If, however, the Court determines that the Verified Complaint is insufficient in any respect, the Court should dismiss without prejudice and grant the government leave to amend the Verified Complaint. Federal Rule of Civil Procedure 15 provides that "leave shall be freely given when justice so requires." This Rule applies in the context of motions to dismiss. "[D]ismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *$70,990,605*, 4 F. Supp. 3d at 195 n.1 (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)). Although the decision to allow leave to amend is ultimately at the Court's discretion, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *$1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d at 376 (quoting *Cortec Indus., Inc. v. Sun Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Indeed, "[l]eave to amend is almost always allowed to cure deficiencies" in pleadings. *Id.* Amendment at this stage of the proceedings would cure any deficiency the Court may identify. The Court should accordingly allow the government leave to amend should it deem dismissal appropriate at this juncture.

1

## V.     CONCLUSION

2          The Court should deny Claimant's motion to dismiss. The Verified Complaint provides more

3    than enough information to allow Claimants to "commence[ ] a meaningful investigation of the facts and

4    draft[ ] a responsive pleading." *Aguilar*, 782 F.3d at 1108-09 (quoting *Mondragon*, 313 F.3d at 866-67).

5    There is abundant information in the Verified Complaint establishing a "reasonable belief" that the

6    Defendant Property is subject to forfeiture. *Id.* The Court should accordingly deny Claimants' clear

7    attempt at obtaining discovery prior to the timelines established in the Local Rules. Should the Court

8    conclude, however, that the Verified Complaint is deficient in any respect, the government respectfully

9    requests that the Court grant the government leave to amend the Verified Complaint.

10

11   DATED:  August 9, 2021                              Respectfully submitted,

12                                                       STEPHANIE M. HINDS
                                                         Acting United States Attorney
13

14                                                            /s/
                                                         _____
15                                                       CHRIS KALTSAS
                                                         Assistant United States Attorney
16

17

18

19

20

21

22

23

24

25

26

27

28