W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105

JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA MAHONEY (*Pro Hac Vice*)
TARIFA B. LADDON (Cal. Bar No. 240419)
FAEGRE DRINKER BIDDLE & REATH, LLP
1800 Century Park East, Ste. 1500
Los Angeles, California 90067

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TWO CONDOMINIUMS LOCATED AT 465 OCEAN DRIVE, UNITS 315 AND 316, MIAMI BEACH, FLORIDA 33139<br><br>Defendants. | Case No. 21-CV-04060-CRB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS THE UNITED STATES' VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**<br><br>Courtroom: SF Courtroom 6 - 17th Floor (Zoom)<br>Date: September 2, 2021<br>Time: 10:00 AM<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................... 1

II. LEGAL STANDARD .............................................................................................................. 2

III. DISCUSSION .......................................................................................................................... 2

    A. The Complaint Fails to Allege Adequately That Dr. Apte or Dr. Richman Engaged in or Received Proceeds from Specified Unlawful Activity. ............................. 3

        1. Healthcare Fraud ............................................................................................. 3

        2. Securities Fraud .............................................................................................. 4

        3. Wire Fraud ...................................................................................................... 7

    B. The Complaint Fails to Allege the Florida Condominiums Were Acquired with the Proceeds of Fraud .......................................................................................... 8

    C. The Forfeiture Complaint Fails to Allege Facts That the Florida Condominiums Were an Instrumentality of Money Laundering. ............................................. 11

    D. The Verification Accompanying the Complaint Is Deficient. ........................................ 13

IV. CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................7

*Hilton v. Mumaw*,
  522 F.2d 588 (9th Cir. 1975) ......................................................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ......................................................................................................2

*Schroeder v. McDonald*,
  55 F.3d 454 (9th Cir. 1995) ......................................................................................................13

*United States v. $448,342.85*,
  969 F.2d 474 (7th Cir. 1992) ......................................................................................................9

*United States v. $6,190.00 in U.S. Currency*,
  581 F.3d 881 (9th Cir. 2009) ......................................................................................................2

*United States v. $814,254.76 in U.S. Currency*,
  51 F.3d 207 (9th Cir. 1995) ........................................................................................................9

*United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*,
  587 F. Supp. 2d 133 (D.D.C. 2008) .........................................................................................13

*United States v. Aguilar*,
  782 F.3d 1101 (9th Cir. 2015) .......................................................................................2, 8, 9, 10

*United States v. Mondragon*,
  313 F.3d 862 (4th Cir. 2002) ......................................................................................................8

*United States v. One 1997 Mercedes E420*,
  175 F.3d 1129 (9th Cir. 1999) ..................................................................................................11

*United States v. Owens*,
  159 F.3d 221 (6th Cir. 1998) ......................................................................................................4

*United States v. Real Property Located at 5208 Los Franciscos Way*,
  385 F.3d 1187 (9th Cir. 2004) ..................................................................................................10

*United States v. Thompson*,
  990 F.3d 680 (9th Cir. 2021) ..........................................................................................9, 11, 12

*United States v. Zachary Apte and Jessica Richman*,
  Case No. 21-cr-0116 (N.D. Cal. Mar. 18, 2021) ........................................................................2

*United States v. Zinnel*,
    725 F. App'x 453 (9th Cir. 2018) ...................................................................................4

**Statutes**

15 U.S.C. § 78j ...................................................................................................................4

18 U.S.C. § 1343 .................................................................................................................7

18 U.S.C. § 1956 ...............................................................................................................11

28 U.S.C. § 1355(a) ............................................................................................................2

28 U.S.C. § 1746 ...............................................................................................................13

Fed. R. Civ. Proc. 8(a) ........................................................................................................2

Fed. R. Evid. 201(b) ...........................................................................................................2

## I. INTRODUCTION

The government seeks the drastic remedy of forfeiting two condominiums based on a threadbare and conclusory Complaint for Civil Forfeiture *In Rem* that fails to allege the required legal elements. When Claimants Dr. Zachary Apte and Dr. Jessica Richman pointed out the numerous flaws in the Complaint, *see* Dkt. 25 ("Motion" or "Mot."), the government responded not with citations to actual allegations, but by imploring the Court to invent and assume a factual basis not pled and by otherwise ignoring many of the issues raised by the Motion to Dismiss. *See, e.g.*, Dkt. 28 ("Opposition" or "Opp.") at 9. The government fails entirely to address the stunning lack of detail supporting its conclusory allegations of securities fraud or wire fraud or explain how Dr. Apte or Dr. Richman could have received proceeds from *potential* investors, who never invested any money in uBiome at all. *Compare id.*, *with* Mot. at 7-8. The government similarly fails to address how Dr. Apte or Dr. Richman could have received proceeds from an alleged healthcare fraud *before* uBiome is alleged to have received any profits from insurers. Most tellingly, the government fails to identify any *specific factual allegations* that would tie its unsubstantiated claims of fraud to the purchase of the properties the government now seeks to forfeit. *See generally* Mot.

Instead of addressing Dr. Apte's and Dr. Richman's arguments or identifying specific facts in support of its claims, the government opposes the Motion by characterizing it as a "thinly veiled effort to elicit discovery" that "would require the government to provide discovery far beyond what is required at this juncture." Opp. at 1. Contrary to the government's illogical claim, the purpose of Dr. Apte's and Dr. Richman's motion is to dismiss the government's Complaint—and thus deprive themselves of discovery—because the government's Complaint does not allege viable claims of specified unlawful activity, let alone a connection between the government's unsubstantiated allegations of fraud and the property it seeks to forfeit. Supplemental Rule G requires the government to plead a valid cause of action before claimants are compelled to participate in rigorous discovery. Because the Complaint completely fails to meet the standard of Rule G, it must be dismissed.

1
REPLY ISO MOTION TO DISMISS VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM*

## II. LEGAL STANDARD

Despite the government's efforts to minimize an indisputably heightened pleading standard, the parties agree on the applicable rule. In addition to satisfying the requirements set forth in Federal Rule of Civil Procedure 8(a), a complaint for civil forfeiture *in rem* must satisfy the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015). Specifically, under Supplemental Rule G(2)(f), a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* "[T]his is a higher standard than 'notice pleading,'" *id.*, and requires the government to "show probable cause that the assets in question are traceable to a violation of an Act of Congress," *United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009).[1]

## III. DISCUSSION

As Dr. Apte and Dr. Richman demonstrated in their Motion, the Complaint fails to plead facts alleging violations of predicate "specified unlawful activity" ("SUA"), to allege a connection between the government's broad allegations of fraud and the purchases of the adjoining condominiums the government seeks to forfeit (the "Florida Condominiums"), or to plead facts that could substantiate the assertion that the Florida Condominiums were an instrumentality of money laundering. The Opposition does not provide any basis to conclude otherwise.[2]

---

[1] Importantly, in civil forfeiture cases, a district court's subject matter jurisdiction is based on 28 U.S.C. § 1355(a). It is a jurisdictional requirement under § 1355 that the government show "probable cause that the assets in question are traceable to a violation of an Act of Congress." *$6,190.00 in U.S. Currency*, 581 F.3d at 885.

[2] As an initial matter, the Opposition cites to the indictment filed in *United States v. Zachary Apte and Jessica Richman*, Case No. 21-cr-0116 (N.D. Cal. Mar. 18, 2021). *See* Opp. at 1, 3. While the Court may take judicial notice of the fact that the indictment was *filed*, it cannot take notice of the *facts alleged* in the indictment when resolving a motion to dismiss in a separate case. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) ("Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'") (citing Fed. R. Evid. 201(b)).

### A.   The Complaint Fails to Allege Adequately That Dr. Apte or Dr. Richman Engaged in or Received Proceeds from Specified Unlawful Activity.

#### 1.   Healthcare Fraud

The Complaint specifically alleges that uBiome's alleged healthcare fraud scheme was designed to obtain money *for uBiome*, saying nothing about a transfer of funds to Dr. Apte or Dr. Richman. Dkt. 1 ("Compl.") ¶¶ 12, 18-19.  In its Opposition, the government cites a single paragraph of the Complaint—Paragraph 17—to argue that the Complaint sufficiently alleges that Dr. Apte and Dr. Richman received proceeds from that alleged healthcare fraud scheme.  *See* Opp. at 8 (citing Compl. ¶ 17).  That paragraph, however, does not support the government's argument:

> uBiome's Series B investors transferred approximately $15 million into uBiome's business accounts in 2016 in exchange for uBiome stock and Founders Shares.  Near the end of 2016, APTE and RICHMAN began funneling funds from the uBiome account to their personal accounts, including approximately $1.2 million into accounts controlled by APTE, and approximately $600,000 into accounts controlled by RICHMAN. These include at $595,000 transfer to Larrain Vial S.A. Correcora De Bolsa, a Chilean bank, for the benefit of APTE.

Compl. ¶ 17.  This paragraph does not allege that Dr. Apte or Dr. Richman received proceeds from healthcare fraud—it says nothing about healthcare or insurance whatsoever.

But even assuming that the Complaint adequately connected the deposit of some funds with the withdrawal of other funds, which it does not as further explained in Section III.B., the allegations of Paragraph 17 could not possibly relate to the alleged healthcare fraud scheme.  Paragraph 17 of the Complaint alleges that the transfer of the "approximately $1.2 million" to Dr. Apte and Dr. Richman occurred "*[n]ear the end of 2016*."  *Id.* (emphasis added).  The Complaint subsequently alleges that "*beginning in 2017*, uBiome began accruing profits from health care payers" through an alleged healthcare fraud scheme.  *Id.* ¶ 18 (emphasis added).  Thus, according to the government's own allegations, any transfers from uBiome's account cannot constitute proceeds of any alleged healthcare fraud scheme that did not result in uBiome accruing profits until 2017—*after* Dr. Apte and Dr. Richman allegedly received funds from uBiome in 2016.

Notably, the remainder of the Complaint fails to allege any connection between profits or payments uBiome received from health insurance providers and Dr. Apte or Dr. Richman.  Outside of

the single allegation above, which can only reasonably relate to an alleged predicate SUA of securities fraud, there is no allegation connecting Dr. Apte or Dr. Richman to the money that uBiome received. Accordingly, those alleged violations cannot serve as a predicate for the forfeiture of the Florida Condominiums.[3]

### 2. Securities Fraud

The government argues that it has sufficiently pled the use of an instrumentality of interstate commerce in furtherance of securities fraud and that the Complaint's allegations of misrepresentation are sufficiently specific. Opp. at 8-11. The government is plainly wrong on both counts.

The government argues that the Complaint alleges the use of a means or instrumentality of interstate commerce or the mails because it "integrates instrumentalities of interstate commerce in its discussion of securities fraud activity." Opp. at 9. Specifically, the government points to allegations that Dr. Apte and Dr. Richman engaged in "transfers between and among financial accounts involving wrongfully obtained investments from investors." *Id.* (citing Compl. ¶¶ 17-19).

To plead securities fraud, however, the alleged instrumentality of interstate commerce must be "use[d] . . . to employ" the fraudulent conduct, 15 U.S.C. § 78j, that is, "in furtherance of the alleged fraud," *Hilton v. Mumaw*, 522 F.2d 588, 602 (9th Cir. 1975). The Complaint, however, pleads no facts involving the use of instrumentalities of interstate commerce to further alleged misstatements or omissions made to investors. Rather, the Complaint references the transfer of funds only *after* the allegedly fraudulent conduct occurred.

The cases the government cites, in a futile effort to salvage this fatal flaw in its pleading, are plainly inapposite. Each case addressed allegations of money laundering, not securities fraud. *See* Opp. at 9. Unlike securities fraud, the money laundering offenses involved in those cases required the use of an instrumentality, *e.g.*, the transfer of money, *after* some underlying criminal conduct. *See United*

---

[3] The government asserts that Dr. Apte and Dr. Richman "assume[] that the Verified Complaint adequately alleges" a healthcare fraud scheme. Opp. at 8. Contrary to the government's baseless argument, the Motion argued that the healthcare fraud allegations were a mere "summary recitation" that "parrots the legal elements" and were legally unsupportable. Mot. at 5-6 & n.4.

*States v. Zinnel*, 725 F. App'x 453, 460 (9th Cir. 2018) (money laundering); *United States v. Owens*, 159 F.3d 221, 226 (6th Cir. 1998) (same).[4] This critical distinction between the two offenses demonstrates the inapplicability of the cases cited by the government. Simply put, the Complaint fails to allege the use of an instrumentality of interstate commerce "to employ" the allegedly fraudulent conduct—a deficiency fatal to the claim.

The Complaint also fails to allege actual misrepresentations that could substantiate a securities fraud claim. Likely recognizing the inadequacy of its vague assertions, the government argues that the sweeping and unsubstantiated allegations of misrepresentations and omissions at the heart of the Complaint's securities fraud theory are, when read as a whole, sufficient to allow the Claimants to commence a meaningful investigation. Opp. at 9. Tellingly, the government provides no citation to allegations in the Complaint that plead the elements of a securities fraud claim. Instead, the government implores the Court to see an expansive picture of fraud from a Complaint that does not land a single brushstroke against the canvas. Like the Complaint, the government's arguments do not identify a single false or misleading statement that Dr. Apte or Dr. Richman made, or identify a single investor to whom any such statements were made. *See* Opp. at 9-10; Compl. at ¶¶ 14-16.

The government nonetheless asserts that Paragraphs 13 through 15 of the Complaint plead the facts necessary to support its conclusion that Dr. Apte or Dr. Richman made misleading statements or omissions to investors. Opp. at 9-10. Yet, no such facts are pled in the Complaint (in Paragraphs 13 through 15 or elsewhere), and the government cannot plead them for the first time in its Opposition. For example, the government's Opposition confusingly argues that the Complaint alleges in Paragraphs 13 and 14 that uBiome's "business activities" were a part of its "healthcare fraud scheme" and were

---

[4] The government also cites to *Owens* for the proposition that "using a bank that engages in activities affecting interstate commerce in any manner is sufficient for purposes of establishing that a transaction affected interstate commerce." Opp. at 9. *Owens* involved a Commerce Clause challenge to gambling and money laundering statutes. Whether banks engage in interstate commerce is irrelevant where, as here, the Complaint fails to allege any direct or indirect use of interstate commerce to further the alleged fraud. *Hilton*, 522 F.2d at 602.

communicated to investors. Opp. at 9-10.[5] However, Paragraphs 13 and 14 do not actually plead facts regarding what was communicated to investors. Although Paragraph 15 makes the conclusory allegation that Dr. Apte and Dr. Richman misrepresented "the success of uBiome's business model in terms of revenues and reimbursement rates" there are no facts pled to suggest what was said to investors, how it was communicated, when it was said, why it was a misstatement, why it was material, or even to whom it was communicated. *See* Compl. ¶ 15. Similarly, the Government offers no rebuttal to explain how Dr. Apte or Dr. Richman could have used "proceeds" that were never received from "potential investors" who declined to invest in uBiome to purchase the Florida Condominiums. *See* Mot. at 7-8. Dr. Apte and Dr. Richman are thus left to guess at the government's potential theories and the identities of any alleged victims of these unspecified statements, and therefore the Complaint fails the standard required by Rule G.

The cases the government attempts to distinguish and recast actually affirm that the Complaint fails to provide sufficiently detailed facts to survive the instant Motion. For example, the government argues that *United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia* supports not dismissing the Complaint. 2012 WL 8455336, at *3 (C.D. Cal. Apr. 12, 2012) (hereinafter "*Bad Tour Glove*"). However, the *Bad Tour Glove* court dismissed a forfeiture complaint which "clearly fail[ed] to meet the heightened pleading requirements" for two primary reasons. *Id.* First, the complaint did not plead facts describing "specific instances" of the alleged extortion, or "when the extortion allegedly occurred," or who specifically were the victims. *Id.* The court came to this conclusion despite the complaint generally describing the alleged scheme's victims, *i.e.* "a businessman . . . who owned a construction company" and a "major international civil engineering firm." *Id.* Second, the court found that the complaint "crucially" failed to allege facts about the claimant's role in the scheme, and instead lumped the claimant's conduct with that of a group called the "Inner Circle." *Id.* Notably, in another case relied upon by the government, *United States v. Sum of*

---

[5] On its face, the quoted sentence from the Opposition states that uBiome's allegedly fraudulent business activities, as described in Paragraph 15 of the Complaint, were, in fact, "communicated to investors." Opp. at 9-10. This is further support for the conclusion that the Complaint fails to allege a securities fraud claim.

*$70,990,605*, the court denied a motion to dismiss a forfeiture based on wire fraud in part because the complaint "specifically identified the victim of the scheme . . . and which members of the conspiracy were responsible for which acts." 4 F. Supp. 3d 189, 200 (D.D.C. 2014).

The Complaint here suffers the same fatal defects as the complaint in *Bad Tour Glove* and is distinguishable from the complaint in *Sum of $70,990,605*. The Complaint does not plead facts regarding any specific misstatements or omissions or any investors to whom those misstatements were made. In this respect, the Complaint here is even less specific than the complaint in *Bad Tour Glove*, which at least identified victims in general terms.

Moreover, the Complaint lumps Dr. Apte and Dr. Richman together, making them the "Inner Circle" of uBiome, and makes no distinction in the conduct attributed to either of the two individuals. Taken at face value, the government must be alleging that every statement or omission made by one was made by the other at the same time and to the same audience and with the same mental state. If the government intends to suggest that certain statements were made by one of either Dr. Apte or Dr. Richman, one cannot tell from this Complaint.

In short, the Complaint neither identifies any specific victim of the alleged scheme, nor does it state which members of the alleged scheme, Dr. Apte or Dr. Richman, were responsible for which acts. For that reason, the alleged securities fraud cannot serve as a predicate SUA for the forfeiture of the Florida Condominiums.

### 3. Wire Fraud

The government argues that the Complaint sufficiently alleges "several iterations" of wire fraud because the "wire fraud scheme encompasses the healthcare and securities fraud schemes." Opp. at 12.[6] Implicit in this argument is the government's recognition that the Complaint does not actually provide

---

[6] The government's additional "argument" that the wire fraud scheme "includes the purchase of [Florida Condominiums] for [Claimants] personal benefit at the expense of healthcare benefit programs and investors," is yet another a vague and unsubstantiated conclusion that finds no support in the Complaint. Opp. at 12. The government does not point to any allegations in the Complaint or explain this "argument;" it is thus impossible for Claimants to respond to such unsubstantiated and vague allegations made for the first time in a brief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

<a>any independent allegations as to wire fraud. Indeed, in its Opposition, the government relies on the statutory language of 18 U.S.C. § 1343 without any discussion of any factual allegations specific to wire fraud in this action. *Id.*</a>

Significantly, because the government fails to allege sufficiently the predicate SUAs of securities fraud or healthcare fraud, the Complaint necessarily fails to allege wire fraud. As explained above, the Complaint omits necessary and specific allegations that Dr. Apte or Dr. Richman engaged in the SUA of securities fraud or that any transfer of alleged healthcare fraud proceeds to Dr. Apte or Dr. Richman occurred. The government therefore cannot rely on these inadequately pled fraud schemes to serve as the predicate SUA of wire fraud. Because the Complaint fails to provide any independent allegations as to wire fraud and pleads no specific facts about the alleged wire fraud scheme, wire fraud cannot serve as a basis for forfeiture.

Finally, despite the government's assertion that the Complaint alleges "several iterations" of wire fraud without identifying a single piece of evidence, even if the Complaint could be read to plead a viable wire fraud scheme, it does so too vaguely to satisfy the heightened pleading standards of Rule G. As the Ninth Circuit held in *Aguilar*, to satisfy Rule G's heightened pleading standard, a forfeiture complaint must allege enough facts for claimants to understand the government's forfeiture theories, undertake an adequate investigation, and draft a response to the allegations. 782 F.3d at 1108-09; *United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002). A complaint that requires claimants to guess upon which of the various unidentified "iterations" of a possible scheme the government will rely fails to meet this standard.

### B. The Complaint Fails to Allege the Florida Condominiums Were Acquired with the Proceeds of Fraud.

The government argues that the Complaint provides enough tracing from SUA proceeds to the Florida Condominiums to survive a motion to dismiss. Opp. at 13. The government's argument asks the Court to substitute a general description of unassociated financial transactions for an actual tracing of proceeds from one of the alleged SUAs to the Florida Condominiums. While the Complaint describes a number of transactions, the Complaint *does not plead a single fact* tying proceeds of an SUA to the purchase of either of the Florida Condominiums. The government claims that the Complaint

<a>
8
REPLY ISO MOTION TO DISMISS VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM*
</a>

"explains how the proceeds" of the alleged schemes "culminated in the purchase of the Defendant Property, via the purchase and sale of a real property in Camas, Washington." *Id.* (citing Compl. ¶¶ 17-23). But the government's argument merely doubles down by stating in a conclusory fashion, unsupported by facts pled in the Complaint, that the funds used to acquire the Camas, Washington property (the "Washington House") "were derived, in substantial part" from SUA proceeds. *Id.* (quoting Compl. ¶ 23). The Complaint alleges no facts to support that supposed conclusion.

The problem is not, as the government argues, that the "Complaint does not provide all of the tracing necessary." Opp. at 13. The problem is that the Complaint provides *none* of the necessary tracing. There are *no facts* alleged connecting the proceeds of the supposed SUA to the Florida Condominiums. The Ninth Circuit has rejected the argument that because claimants have allegedly received proceeds of an SUA, their property is forfeitable even if it is not traced to those proceeds. *United States v. Thompson*, 990 F.3d 680, 686 (9th Cir. 2021) ("[O]nly property that is traceable to the proceeds is forfeitable, not other property that [defendants] may own[.]"). The government must plead some connection between the proceeds of an SUA and the property to be forfeited.

For example, the government claims that Dr. Apte and Dr. Richman received proceeds of healthcare and securities fraud in 2016, Opp. at 7-8, 13, but this argument fails both on the facts and the law. The Complaint simply sets forth two allegations: first, that uBiome received $15 million from investors in various unspecified business accounts at unspecified times in 2016; and, second, that near the end of 2016, Dr. Apte and Dr. Richman each received money from an unspecified single uBiome account, totaling approximately $1.2 million.[7] Compl. ¶ 17. The government asks the Court to merely assume, without pleading a single fact in support, that the money allegedly received from a single uBiome account at the end of 2016 was the very same money placed in multiple, unspecified uBiome accounts earlier that year. But even assuming the government was correct that the transactions shared a common uBiome account (a fact not pled in the Complaint), this would still be insufficient, as the

---

[7] Although the Complaint uses the suggestive word "funnel[]" in a baseless effort to suggest some unexplained mysterious impropriety, it details no factual allegations to explain why the transfer of money from a company account to two executive employees was inappropriate or unusual in any way. The Complaint also fails to allege that the supposedly "funneled" funds were proceeds of any SUA.

government must trace proceeds to specific funds, not accounts. *See United States v. $448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992) (rejecting the government's argument that the specified unlawful activity can be traced to "accounts," and holding that the activity must be traced to specific funds); *see also United States v. $814,254.76 in U.S. Currency*, 51 F.3d 207, 209 (9th Cir. 1995) (adopting the reasoning of *$448,342.85*, 969 F.2d at 476).

The government's cited cases do not support the conclusion that no tracing at all is required. For example, the government misleadingly quotes *Aguilar* for the proposition that "tracing is not at issue at the motion to dismiss stage." Opp. at 13 (quoting 782 F.3d at 1109). *Aguilar* is inapposite. The issue in *Aguilar* was whether all, or just a portion, of the funds used to acquire the defendant property were part of the alleged money laundering. 782 F.3d at 1109. The court held that "arguments that a portion of the property that the government claims is not subject to forfeiture" were a matter for trial. *Id.* Here, the issue is instead whether the Complaint traces *any* portion of the Florida Condominiums to proceeds of SUA. Accordingly, *Aguilar* does not apply.[8]

A careful review of the Complaint shows that it fails to trace any proceeds from an SUA to the Florida Condominiums. The government claims that Dr. Apte and Dr. Richman invested funds derived from some SUA to purchase their home in Camas, Washington. Notably, the Complaint is devoid of any factual allegations suggesting that the funds used to purchase or pay off the mortgage on the Washington House were, in fact, proceeds of an SUA. As argued above, the Complaint does not plead facts suggesting that the "approximately $1.2 million" transferred to Dr. Apte's and Dr. Richman's accounts were proceeds of an SUA. *See* Compl. ¶ 17. Even assuming they were (they were not), the Complaint does not allege any facts to suggest those proceeds were later used to purchase or pay off the mortgage of the Washington House. At most, the Complaint boils down to two allegations: Dr. Apte and Dr. Richman received some alleged proceeds in some unspecified personal accounts; and, later, they

---

[8] The government also cites *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) for the proposition that "the government is not required to prove its case simply to get in the courthouse door." Opp. at 13. That case addressed an argument that the government required evidence at the complaint stage, and the claimants apparently did not contest that the government's allegations, if true, would state a claim. *See id.* Although the government need not submit evidence to prove its case in the Complaint, it must appropriately plead its case.

used other, potentially different, unspecified personal accounts to buy the Washington House. The Complaint does not allege any connection between the receipt of any proceeds and the subsequent acquisition of the Washington House.

The government's Opposition also does not acknowledge that, as pointed out in the Motion, the Complaint does not identify which of the two Florida Condominiums was purchased with the proceeds of the Washington House or why the use of those funds to buy one property would subject the other to forfeiture. *Compare generally*, Opp., *with* Mot. at 10. The government's wholly unsupported declaration that it alleged "ample facts" for Dr. Apte and Dr. Richman "to initiate an investigation" to determine whether such a connection may exist reflects the insufficiency of the Complaint. Opp. at 13. It must be dismissed. *See Thompson*, 990 F.3d at 686.

### C. The Forfeiture Complaint Fails to Allege Facts That the Florida Condominiums Were an Instrumentality of Money Laundering.

The government next argues that the Complaint "adequately alleges" that Dr. Apte and Dr. Richman "engaged in specified unlawful activities giving rise to money laundering, specifically, wire fraud, healthcare fraud, and securities fraud schemes." Opp. at 14. But allegedly engaging in wire fraud, healthcare fraud, or securities fraud does not "give rise to money laundering." Money laundering is a separate offense, with separate elements, and must be pled separately and adequately. "Money laundering requires proof of three elements: (1) the defendant conducted a financial transaction that 'in fact involve[d] the proceeds of specified unlawful activity;' (2) the defendant knew that the property involved was the proceeds of some form of unlawful activity; and (3) the defendant knew that a transaction he engaged in was for the purpose of concealing or disguising ownership or control of ill-gotten proceeds." *United States v. One 1997 Mercedes E420*, 175 F.3d 1129, 1131-32 (9th Cir. 1999) (citing 18 U.S.C. § 1956). The Complaint fails to allege any of these elements.

Focusing solely on the concealment element, the government argues that the purpose of concealment may be inferred from the circumstances surrounding a transaction and the Complaint

11
REPLY ISO MOTION TO DISMISS VERIFIED COMPLAINT FOR CIVIL FORFEITURE *IN REM*

sufficiently alleges the "hallmarks" of money laundering.[9] Opp. at 15-16. Citing to inapt case law, the government asserts that the required elements of money laundering can be inferred from "funneling of illegal funds through various fictitious business accounts," "convoluted financial transactions," or "inter-company transfers with no clear purpose." *Id.* The Complaint, however, alleges that Dr. Apte and Dr. Richman purchased the Florida Condominiums as "part of a series of real estate transactions" "designed to conceal the illicit nature of funds." Compl. ¶ 25. The Complaint does not allege any of these other alleged hallmarks of money laundering are associated with the purchase of the Florida Condominiums.[10]

The purchases of the Florida Condominiums, the only transactions actually alleged to be connected to money laundering activities in the Complaint, *see* Compl. ¶ 23, bear none of the government's supposed "hallmarks" that could tend to suggest Dr. Apte or Dr. Richman acted to conceal the nature, source, or location of the funds used to purchase the Florida Condominiums. The Complaint does not allege the properties were acquired through fictitious business accounts or via inter-company transfers. Further, although the Complaint references a "series" of real estate transactions, it pleads facts involving only two separate real estate transactions—one for the Washington House, and one for the Florida Condominiums.[11] There is nothing convoluted about selling one home to move to another. Moreover, although the government cites to other accounts from which the balance of funds to purchase the Florida Condominiums was obtained, the government *does not allege* those funds constitute proceeds of specified unlawful activity and thus the source of those funds is immaterial. *See Thompson*, 990 F.3d at 686.[12]

---

[9] Because the Complaint fails to allege the substantive healthcare, securities, and wire fraud claims, and the money laundering claims are derivative of those, the money laundering claim also fails on the first and second elements.

[10] To the extent that the government argues in its Opposition that the use of a uBiome account as a "funnel" to personal accounts was further part of alleged money laundering activities, that argument is not asserted in the Complaint and cannot be alleged through its responsive briefing.

[11] The Opposition suggests the mere formation and use of a trust was in some way nefarious. Opp. at 16. Certainly the government is not alleging the use of a trust is, in and of itself, a "hallmark" of money laundering.

[12] The government also argues that "[a]ctivity after APTE and RICHMAN left the country also indicates that they continued their money laundering activities." Opp. at 16. The Complaint alleges generally

### D. The Verification Accompanying the Complaint Is Deficient.

Finally, despite the government's lengthy protests to the contrary, the purported verification of the Complaint is insufficient. The government argues that the verification is not deficient because it states the agent "believes" the facts alleged in the Complaint are true, and belief is "logically necessary to claim or attest the fact is true." Opp. at 6. While the government's dictionary definition may be accurate, it proves the point: belief and knowledge are not the same. The agent does not attest that the facts are true, or that she knows them to be true; she merely opines that she believes they are. There is no indication the agent has reviewed records, traced funds, or done any other work to be able to attest that she knows that the (few) facts the government alleges in its Complaint are, indeed, true.

The government claims that the cases it cites "actually use or reference 'belief'" in approving the relevant verifications in those cases. *See* Opp. at 6 (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) and *United States v. 8 Gilcrease Lane, Quincy, Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008)). This is incorrect; neither case uses "belief" to approve the verification. To the contrary, each of the government's own parenthetical citations are to cases in which the agent attests that the allegations are *known* to be true. *See, e.g.*, *Schroeder*, 55 F.3d at 461 (noting that the "verified complaint" attested "personal knowledge of admissible evidence" and was "not based purely on . . . belief"); *8 Gilcrease Lane*, 587 F. Supp. 2d at 139. Whether belief is logically necessary to knowledge, believing is plainly different from knowing. The verification carefully refuses to provide an attestation based on knowledge, intentionally diverting from the well-accepted attestation based on statutorily prescribed language of 28 U.S.C. § 1746. It is thus deficient.

---

that Dr. Apte and Dr. Richman moved money between personal accounts, both bank and brokerage accounts, in 2020. Compl. ¶ 24. Crucially, none of those transactions involve funds that were invested in the Florida Condominiums—the defendant properties that the government now seeks to forfeit. Moreover, even by the government's own terms, these allegations fail to adequately plead money laundering. The transactions bear none of the government's supposed "hallmarks" of money laundering and the Complaint fails to allege that the transactions were for the purpose of concealing the source of the funds at issue.

## IV. CONCLUSION

The government's Complaint falls far short of the heightened pleading requirements demanded to maintain a civil forfeiture action. It should be dismissed.

DATED: August 16, 2021

Respectfully submitted,

By: /s/ W. Douglas Sprague
W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)

**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
*dsprague@cov.com*
*gjung@cov.com*
*rbhatt@cov.com*

By: /s/ Joel M. Hammerman
JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA MAHONEY (*Pro Hac Vice*)
TARIFA B. LADDON (Cal. Bar No. 240419)

**FAEGRE DRINKER BIDDLE & REATH, LLP**
1800 Century Park East, Ste. 1500
Los Angeles, California 90067
Telephone: (310) 500-2166
Facsimile: (310) 229-1285
*joel.hammerman@faegredrinker.com*
*josh.mahoney@faegredrinker.com*
*tarifa.laddon@faegredrinker.com*