STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRIS KALTSAS (NYBN 5460902)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6915
    FAX: (415) 436-7234
    chris.kaltsas2@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TWO CONDOMINIUMS LOCATED AT 465 OCEAN DRIVE, UNITS 315 AND 316, MIAMI BEACH, FLORIDA 33139,<br><br>    Defendants.<br><hr><br>ZACHARY APTE,<br><br>JESSICA RICHMAN, and<br><br>465 OCEAN LAND TRUST,<br><br>    Claimants. | CASE NO. 21-CV-04060 CRB<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE CLAIMS PURSUANT TO THE FUGITIVE DISENTITLEMENT DOCTRINE AND FOR LACK OF STANDING**<br><br>DATE: December 3, 2021<br>TIME: 10:00 a.m.<br>COURTROOM: #6, 17th Floor (Zoom) |

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ..................................................................................................2

3    II.   BACKGROUND ...................................................................................................3

4    III.  LEGEAL STANDARD .........................................................................................6

5    IV.   ARGUMENT .........................................................................................................8

6          A.    Warrants Have Issued for the Apprehension of Claimants APTE and RICHMAN in a
                 Criminal Case Related to this Civil Forfeiture Action (Elements One and Three) ......8
7

8          B.    Claimants Had Notice and Knowledge of the Warrants Issued in the Criminal Case
                 (Element Two) ..................................................................................................9
9

10         C.    Claimants are Not Confined or Otherwise Held in Custody in Another Jurisdiction
                 (Element Four) ............................................................................................... 10

11         D.    Claimants Have Deliberately Avoided Prosecution by Leaving the United States, and
                 Declining to Reenter the Country (Element Five) ....................................... 10
12

13         E.    The Fugitive Disentitlement Doctrine Applies Equally to Claimant 465 Ocean Land
                 Trust, Which Also Lacks Standing to Bring a Claim ................................. 13
14

15   V.    CONCLUSION.................................................................................................... 17

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page(s)**

3

*Degen v. United States,*
    517 U.S. 820 (1996)................................................................................6

4

*In re Saber,*
    233 B.R. 547 (Bkrpcy. S.D. Fla. 1999)................................................16

5

*Link v. Wabash R.R. Co.,*
    370 U.S. 626 (1962)..............................................................................10

6

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................8

7

*People v. Chi. Title & Tr. Co.,*
    389 N.E.2d 540 (Ill. 1979)....................................................................16

8

9

*Taylor v. Richman's New Approach Ass'n, Inc.,*
    351 So. 2d 1094 (Fla. 2d DCA 1977)....................................................16

10

*United States v. $1,181,895.00,*
    2015 WL 631394 (C.D. Cal. Feb. 12, 2015)...........................................7

11

*United States v. $100,348.00 in U.S. Currency,*
    354 F.3d 1110 (9th Cir. 2004) ..............................................................15

12

*United States v. $129,374 in U.S. Currency,*
    769 F.2d 583 (9th Cir. 1985) ................................................................13

13

14

*United States v. $133,420.00,*
    672 F.3d 629 (9th Cir. 2012) ..................................................................7

15

*United States v. $304,980.00 in U.S. Currency,*
    732 F.3d 812 (7th Cir. 2013) ................................................................15

16

*United States v. $38,852.00 in U.S. Currency,*
    328 F. Supp. 2d 768 (N.D. Ohio 2004).................................................15

17

*United States v. $525,695.24 Seized from JPMorgan Chase Bank Investment Account,*
    869 F.3d 412 (6th Cir. 2017) ................................................................12

18

19

*United States v. $6,190.00 in U.S. Currency,*
    581 F.3d 881 (9th Cir. 2009) ..............................................................6-7

20

*United States v. $6,976,934.65 Plus Interest,*
    478 F. Supp. 2d 30 (D.D.C. 2007)..........................................................7
    554 F.3d 123 (D.C. Cir. 2009)..............................................................10

21

22

*United States v. $671,160.00 in U.S. Currency,*
    730 F.3d 1051 (9th Cir. 2013) ...........................................7-8, 10, 12-13

23

*United States v. $8,440,190.00 in US Currency,*
    719 F.3d 49 (1st Cir. 2013)...................................................................15

24

*United States v. 1990 Chevrolet Corvette,*
    37 F.3d 421 (8th Cir. 1994) ..................................................................17

25

*United States v. 2005 Dodge Magnum,*
    845 F. Supp. 2d 1361 (N.D. Ga. 2012)..................................................17

26

27

*United States v. 475 Martin Lane,*
    545 F.3d 1134 (9th Cir. 2008) ................................................................8

28

*United States v. 5 S. 351 Tuthill Rd.,*
   233 F.3d 1017 (7th Cir. 2000) .................................................................................15

*United States v. 5208 Los Franciscos Way,*
   385 F.3d 1187 (9th Cir. 2004) .............................................................................8, 17

*United States v. 8 Gilcrease Lane,*
   641 F. Supp. 2d 1 (D.D.C. 2009) ......................................................................15, 17

*United States v. Abhishek Krishnan's Real and Personal Prop.,*
   469 F. Supp. 3d 481 (E.D.N.C. 2020) ............................................................7, 9, 13

*United States v. All Assets Listed in Attachment A (Megaupload),*
   89 F. Supp. 3d 813 (E.D. Va. 2015) .........................................................................7

*United States v. Cambio Exacto, S.A.,*
   166 F.3d 522 (2d Cir. 1999) ......................................................................................7

*United States v. Collazos,*
   368 F.3d 190 (2d Cir. 2004) ................................................................... 7, 10, 13-14

*United States v. Nat'l Bank of Comm.,*
   472 U.S. 713 (1985) .................................................................................................15

*United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade Cty., Fla.,*
   868 F.2d 1214 (11th Cir. 1989) ...............................................................................13

*United States v. Technodyne LLC,*
   753 F.3d 368 (2d Cir. 2014) .......................................................................... 7, 12-14

*United States v. U.S. Currency, $81,000.00,*
   189 F.3d 28 (1st Cir. 1999) ......................................................................................15

*Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC,*
   859 F.3d 295 (4th Cir. 2017) ...................................................................................*10*

**Statutes**

18 U.S.C. § 981(a)(1) ......................................................................................................2

18 U.S.C. § 983(d)(6) ............................................................................................. 8, 16-17

18 U.S.C. § 985(c) ...........................................................................................................5

28 U.S.C. § 2466 .....................................................................................................*passim*

Fla. Stat. § 689.071 .......................................................................................................15

**Rules**

Fed. R. Civ. P. Supp. G(5)(b) .........................................................................................5

Fed. R. Civ. P. Supp. G(8)(c)(i)(B).............................................................................2, 15

**Other Authorities**

76 Am. Jur. 2d Trusts § 261 ..........................................................................................16

Asset Forfeiture in the United States: A Treatise on Forfeiture Law, § 9-4 ..............15

Restatement (Third) of Trusts § 2 (2003) ....................................................................14

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 3, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California 94102, or on Zoom, the United States of America hereby respectfully moves to strike the Verified Claims of Claimants Zachary Apte, Jessica Richman, and 465 Ocean Land Trust.

The Motion will be based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Assistant United States Attorney Chris Kaltsas, attached hereto as Exhibit "A," along with all exhibits; and all other files and pleadings in this matter.


DATED:  October 18, 2021                                    STEPHANIE M. HINDS
                                                            Acting United States Attorney


                                                            _____/s/_____
                                                            CHRIS KALTSAS
                                                            Assistant United States Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The United States of America hereby moves, pursuant to Title 28, United States Code, Section 2466 and Supplemental Federal Rule of Civil Procedure G(8)(c)(i)(B) to strike the verified claims filed by Claimants Zachary Apte, Jessica Richman, and 465 Ocean Land Trust in accordance with the fugitive disentitlement doctrine, articulated in that same statute. The basis for the motion is that each Claimant is either a fugitive as defined by the fugitive disentitlement statute, or, in the case of Claimant 465 Ocean Land Trust, the Claimant is solely a nominee for the other Claimants and lacks standing pursuant to Supplemental Federal Rule of Civil Procedure G(8)(c)(i)(B).

The government has filed a Verified Complaint for Civil Forfeiture *In Rem* ("Verified Complaint") seeking forfeiture of two condominiums located at 465 Ocean Drive, Miami Beach, Florida 33139 (Units 315 and 316) ("the Defendant Properties"). The Verified Complaint alleges that the Defendant Properties are subject to forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(A) and (a)(1)(C), as property involved in money laundering, and/or property constituting, or traceable to, the proceeds of specified unlawful activities. Compl. ¶¶ 26-37.[1] The Verified Complaint followed the filing of an Indictment against Zachary Apte ("APTE") and Jessica Richman ("RICHMAN") on March 18, 2021. *See United States v. Zachary Apte and Jessica Richman*, 21-CR-0116 CRB.

On July 6, 2021, APTE and RICHMAN each filed a claim in this civil forfeiture action. Dkt. Nos. 15, 17. On July 8, 2021, the 465 Ocean Land Trust ("the Land Trust"), through its newly appointed successor trustee, Gabriel Ceriotti, also filed a claim in this action. Dkt. No. 18. APTE, RICHMAN, and the Land Trust (collectively, "Claimants") each assert the same types of interest in the Defendant Properties, that is, "a cognizable right, beneficial interest, and ownership interest." Verifications of Claims, Dkt. Nos. 15, 17, 18, at 3. None of the Claimants, however, have identified what *portion* of those interests they hold in the properties, so it is unclear whether each claimant is individually asserting

---

[1] Citations to the record in this case are referenced by their respective docket entries ("Dkt. No."), with the exception of the First Amended Verified Complaint, which will be referenced as "Compl." Any references to an "Indictment" refer to Dkt. No. 1 in *United States v. Zachary Apte and Jessica Richman*, Case No. 21-CR-0116 (N.D. Cal. Mar. 18, 2021).

a 100 percent interest in the property, or some lesser portion, for purposes of their individual claims.

Claimants have all appeared through separate counsel in the civil forfeiture proceedings. APTE and RICHMAN, however, have failed to appear to face the Indictment in the parallel criminal proceeding. Indeed, neither APTE nor RICHMAN are in the United States; in the span of time between the execution of a search warrant on their company, uBiome, Inc., and the issuance of the Indictment, APTE and RICHMAN married and moved, seemingly permanently, to Germany, where APTE is a citizen. To date, both APTE and RICHMAN have refused to appear before this Court to face the criminal charges before them. Claimants' brazen attempt to use this Court to their benefit, both individually and through the Land Trust (an entity which APTE and RICHMAN own in its entirety), while absconding from criminal charges, merits this Court's intervention.

It is precisely for cases like these that Congress codified the fugitive disentitlement doctrine, previously a creature of common law, into statute as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). 28 U.S.C. § 2466. The doctrine provides courts with the authority to strike claims and answers in civil forfeiture proceedings when the claimants are fugitives from justice, as defined in the statute. The purpose of the doctrine is to prevent claimants from using the power of the courts to actively defend against civil forfeiture proceedings, when those same claimants are fugitives from justice in criminal proceedings brought against them in the United States. The doctrine is fully applicable here, as Claimants APTE and RICHMAN are fugitives from justice pursuant to the doctrine. Moreover, the claim of Claimant Land Trust should be stricken because it is a mere nominee for APTE and RICHMAN and it lacks standing to bring a claim.

The Court should accordingly grant the government's motion to strike each of the claims in this case. Should the Court conclude that additional discovery is necessary to determine whether granting the government's motion is appropriate, the government respectfully requests that discovery be limited to that basis alone. The government further requests that, if the Court deems additional discovery necessary, this motion be revisited if Claimants raise Fifth Amendment objections to any discovery request the government propounds.

## II.     BACKGROUND

APTE and RICHMAN were the co-founders of uBiome, Inc. ("uBiome"), a company that

1   purported to test customers' "microbiomes" with the ostensible purpose of allowing consumers to

2   understand the bacterial composition of their various organ systems. Compl. ¶¶ 12-13, Indictment ¶¶ 17.

3   RICHMAN served as uBiome's Chief Executive Officer, whereas APTE served as uBiome's Chief

4   Technology Officer until approximately May 2018, when APTE and RICHMAN began serving as co-

5   Chief Executive Officers. Indictment ¶¶ 3-4. Although uBiome initially offered its products to

6   consumers on the open market, it eventually began offering its products to medical professionals and

7   patients for "clinical" use, *i.e.*, use by medical professionals to make medical decisions. Indictment ¶ 18.

8       APTE's and RICHMAN's decision to launch uBiome's products for ostensible use by medical

9   professionals in clinical settings preceded various actions designed to defraud healthcare providers,

10  healthcare benefit programs, and uBiome investors. APTE and RICHMAN submitted reimbursement

11  claims for clinical test results on samples that had already been analyzed with a consumer test or older

12  clinical test; in other words, they fraudulently submitted reimbursement requests for dated samples or

13  fraudulently submitted multiple reimbursement requests for the same samples. Compl. ¶ 13. APTE and

14  RICHMAN also used a "captive network" of healthcare professionals to review and approve tests. *Id.*

15  This alone was problematic, but even more so because APTE and RICHMAN intentionally provided

16  those professionals with limited and misleading information in a manner designed to facilitate approval

17  of the requested uBiome tests. *Id*. uBiome also fraudulently submitted reimbursement requests for tests

18  that had not been fully validated under applicable scientific standards; manipulated dates of service to

19  maximize reimbursements; and failed to collect patient responsibility payments in violation of law and

20  policies of healthcare benefits programs. *Id.*

21      uBiome, through APTE and RICHMAN, also raised several rounds of funding with outside

22  investors. Compl. ¶¶ 14-22. In doing so, however, APTE and RICHMAN made numerous

23  misrepresentations to those investors and deceived them in material ways, including as to the success of

24  uBiome's collection of healthcare benefit reimbursement rates and revenues; the purported uses and

25  clinical acceptance of uBiome's tests in the medical community; and the legality of uBiome's business

26  practices, especially concerning uBiome's approach (or lack thereof) in collecting patient responsibility

27  payments, the illegal use of a captive network of medical professionals to obtain orders for tests, and the

28  marketing and use of "test upgrades." *Id.*

1    These investments ultimately funded APTE's and RICHMAN's lifestyles, including the

2   purchase of real estate. Compl. ¶¶ 23-36. These purchases included the purchase of a home in Camas,

3   Washington on or about October 12, 2017. Compl. ¶ 30; Indictment ¶ 90. That property was

4   subsequently sold on January 28, 2020, and the proceeds from the sale were used to partially purchase

5   the Defendant Properties, more specifically described as two condominiums located at 465 Ocean Drive,

6   Miami Beach, Florida 33139 (Units 315 and 316). *Id.* The Defendant Properties were purchased by

7   APTE and RICHMAN through the Land Trust, a trust that has served as the title holder of record for the

8   Defendant Properties, *see* Dkt. Nos. 15-2 & 15-3, and as the transferor of the funds used to purchase the

9   Defendant Properties after the sale of the Camas property, *see* Dkt. No. 15-1. The remaining funds that

10  APTE and RICHMAN used to purchase the Defendant Properties were spread over thirteen separate

11  transfers from eight separate financial accounts at numerous banks and other financial institutions.

12  Compl. ¶¶ 34-35. These transfers culminated in the purchase of the Defendant Properties. *Id.*

13    The government filed the instant Verified Complaint for Civil Forfeiture *In Rem* on May 27,

14  2021. As stated above, APTE and RICHMAN filed their respective claims on July 6, 2021, and the Land

15  Trust filed its claim on July 8, 2021. Dkt. Nos. 15, 17, 18. In accordance with the rules governing civil

16  forfeiture of real property, the government filed its complaint; posted notice of the complaint on the

17  Defendant Properties; and served notice and a copy of the complaint on the owner through counsel. *See*

18  Fed. R. Civ. P. Supp. G(3); 18 U.S.C. § 985(c). Each Claimant, including the Land Trust, timely filed

19  their respective motions in accordance with Supplemental Federal Rule of Civil Procedure G(5)(b). In

20  support of its claim, Claimant Land Trust filed a copy of the Trust Agreement and a Certificate of

21  Appointment of Successor Trustee for the 465 Ocean Land Trust. Dkt. No. 18 at 4-11. Per the trust

22  documents, the sole beneficiaries and apparent managers of the trust are APTE and RICHMAN, and the

23  sole trustee is APTE's friend, Gabriel Ceriotti. *Id.*  The Court granted Claimants' motion to dismiss the

24  government's complaint with leave to amend on August 26, 2021. Dkt. No. 34. The government filed

25  the First Amended Complaint shortly thereafter. Dkt. No. 35.

26    APTE's and RICHMAN's activities with respect to their management of uBiome also form the

27  basis for two related actions before the Court, including one criminal action against APTE and

28  RICHMAN, as well as a suit brought by the U.S. Securities and Exchange Commission. *See United*

1  *States v. Zachary Apte and Jessica Richman*, Case No. 21-CR-0116 (N.D. Cal. Mar. 18, 2021); *SEC v.*

2  *Richman, et al.*, Case No. 21-CV-01911 (N.D. Cal. Mar. 18, 2021). The criminal indictment contains

3  forfeiture allegations that seek the Defendant Properties in addition to a forfeiture money judgment.

4  Indictment ¶¶ 91-95.

5      Upon the filing of the Indictment, counsel for the government contacted counsel for APTE and

6  RICHMAN. Defendants' counsel indicated that since at least March 17, 2021 (the day before the

7  government filed an Indictment that a Grand Jury returned against APTE and RICHMAN), RICHMAN

8  was suffering from a long-term medical issue, and APTE was serving as RICHMAN's caregiver.

9  Declaration of Assistant United States Attorney Chris Kaltsas ("Kaltsas Dec."), Ex. 1 ¶ 4. The

10  government reached out to defendants' counsel yet again on July 20, 2021, at which time they indicated

11  that RICHMAN's prior sickness and APTE's position of caretaker hindered their return to the United

12  States to face the charges in the Indictment. *Id.* ¶ 5. Counsel for APTE and RICHMAN did not indicate

13  whether RICHMAN or APTE had any plan to return to the United States to face the charges in the

14  Indictment. The government and counsel for APTE and RICHMAN spoke again on October 7, 2021, at

15  which time claimants' counsel indicated that their clients' medical situation and positions towards

16  returning to the United States had not materially changed and that no plans to return to the United States

17  were forthcoming. *Id.* ¶ 6. This motion follows.

18  **III.    LEGAL STANDARD**

19      "The fugitive disentitlement doctrine prohibits an individual from using the courts to further one

20  claim while avoiding the courts' jurisdiction on another matter." *United States v. $6,190.00 in U.S.*

21  *Currency*, 581 F.3d 881, 885 (9th Cir. 2009). Originally a doctrine at common law, Congress codified it

22  as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") after the Supreme Court of the

23  United States declined to find that courts maintained the inherent authority to strike the claims of

24  fugitives in criminal prosecutions related to the relevant civil forfeiture actions. *Id.* (citing *Degen v.*

25  *United States*, 517 U.S. 820, 823 (1996)); *see also* 28 U.S.C. § 2466. Since then, courts have generally

26  articulated a five-element test for determining whether a court may strike a fugitive's claim in a

27  forfeiture proceeding under the fugitive disentitlement doctrine:

28          (1) a warrant or similar process must have been issued in a criminal case
            for the claimant's apprehension; (2) the claimant must have had notice or

1

2

3

> knowledge of the warrant or process; (3) the criminal case must be related
> to the forfeiture action; (4) the claimant must not be confined or
> otherwise held in custody in another jurisdiction; and (5) the claimant
> must have deliberately avoided prosecution by leaving the United States,
> declining to enter or reenter the country, or otherwise evading the criminal
> court's jurisdiction.

4

5

6

7

8

9

10

*United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051, 1055-56 (9th Cir. 2013) (quoting *$6,190*, 581 F.3d at 886). The doctrine also applies to the claims of entities owned or managed by claimants subject to the doctrine in addition to the claimants themselves. *See United States v. Abhishek Krishnan's Real and Personal Prop. (Krishnan)¸* 469 F. Supp. 3d 481, 486 (E.D.N.C. 2020) (denying claim when claimant makes his claim through a company); *United States v. All Assets Listed in Attachment A (Megaupload)*, 89 F. Supp. 3d 813, 828 (E.D. Va. 2015) (corporation disentitled when the corporation's majority shareholder is disentitled).

11

12

13

14

15

16

17

18

19

20

The government bears the burden of making a showing as to each of the elements described above. *United States v. Technodyne LLC*, 753 F.3d 368, 380-81 (2d Cir. 2014). In evaluating a motion to strike based on the fugitive disentitlement statute, the Court should consider it "as something like a motion to dismiss, [where the Court] look[s] to matters outside the pleadings, and . . . where appropriate, allow[] for the possibility of conversion to summary judgment." *$671,160*, 730 F.3d at 1055 (quoting *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 38 (D.D.C. 2007)). Upon a finding that these elements have been met, the Court "may disallow a person from using the resources of the courts of the United States." 18 U.S.C. § 2466(a). The statute vests "the ultimate decision whether to order disentitlement . . . in the sound discretion of the district court." *$6,190*, 581 F.3d at 886 (quoting *United States v. Collazos*, 368 F.3d 190, 198 (2d Cir. 2004)).

21

22

23

24

25

26

27

28

Moreover, to successfully contest a forfeiture, a claimant must demonstrate both statutory and Article III standing. *United States v. $1,181,895.00*, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015). Standing is a threshold jurisdictional issue in civil forfeiture cases, *see United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526-27 (2d Cir. 1999), and the government is entitled to "test" the veracity of the claimant's claim of ownership and interest any time after a claim is filed. *See United States v. $133,420.00*, 672 F.3d 629, 642 (9th Cir. 2012). In a civil forfeiture proceeding, standing is satisfied if the claimant can show "a colorable interest in the property, for example, by showing actual possession,

1   control, title, or financial stake." *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008).

2   Notably, an owner of property does not include "a nominee who exercises no dominion or control over

3   the property." 18 U.S.C. § 983(d)(6)(B)(iii). It follows that if the claimant does not have a real interest in

4   the property, there is no "case or controversy," and consequently no basis for the court to exercise

5   jurisdiction under Article III of the Constitution. *See United States v. 5208 Los Franciscos Way*, 385

6   F.3d 1187, 1191 (9th Cir. 2004). The burden for showing standing rests on the party asserting it. *Lujan*

7   *v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

8   **IV.   ARGUMENT**

9       Claimants are clearly subject to disentitlement in this action. The first four elements are

10  indisputable—APTE and RICHMAN had notice of warrants that this Court issued for their arrest.

11  Moreover, they both have notice of this forfeiture action through counsel, who are representing them in

12  both this action and the related criminal matter. Neither APTE nor RICHMAN are in custody in

13  Germany, where they reside. Finally, with respect to the fifth element of the test, there is no reasonable

14  dispute that Claimants have "deliberately avoided prosecution by leaving the United States, declining to

15  enter or reenter the country, or otherwise evading the criminal court's jurisdiction." *$671,160*, 730 F.3d

16  at 1055-56 (citation omitted). The court should accordingly grant the government's motion. With respect

17  to the Land Trust, it too is subject to disentitlement as it is only a nominee for APTE and RICHMAN.

18  The Land Trust further lacks standing. Each claim should accordingly be stricken.

19  **A.    Warrants Have Issued for the Apprehension of Claimants APTE and RICHMAN in
        a Criminal Case Related to this Civil Forfeiture Action (Elements One and Three)**

20      The first and third elements of the fugitive disentitlement statute require the government to

21  demonstrate that "a warrant or similar process must have been issued in a criminal case for the

22  claimant's apprehension," and that "the criminal case must be related to the forfeiture action." *Id.* This

23  Court authorized the issuance of arrest warrants for APTE and RICHMAN after a Grand Jury returned a

24  true bill against them in *United States v. Zachary Schulz Apte & Jessica Sunshine Richman*, No. 3:21-

25  CR-116 CRB, Dkt. No. 1 (filed Mar. 18, 2021). As explained in greater detail above, the Indictment

26  charges APTE and RICHMAN with healthcare fraud; conspiracy to commit healthcare fraud;

27  aggravated identity theft; conspiracy to commit wire fraud and securities fraud; wire fraud; fraud in

28

1    connection with the purchase and sale of securities; money laundering; and aiding and abetting.

2    Indictment  at 24-33. The facts underlying those charges are the same as those at issue in this forfeiture

3    proceeding, to wit: defrauding healthcare benefit programs, investors, and others as to the material

4    workings of uBiome's business, including the testing of archived samples; the relative success of its

5    business model, including with respect to billing and insurance; the use of various tests without

6    obtaining required regulatory approvals; the omission of critical facts to doctors ordering uBiome's

7    tests; manipulation of dates of service for uBiome tests; fraudulently failing to collect patient

8    responsibility; defrauding healthcare insurers upon their various requests for information; and

9    misrepresentation to investors as to the amount of money uBiome made from billing healthcare benefits

10   providers, among other things. *See generally id.* A Grand Jury concluded that there was probable cause

11   to believe that APTE and RICHMAN committed the criminal violations described therein and discussed

12   here, and the Court issued arrest warrants for APTE and RICHMAN on that basis. Dkt. No. 1 at 36, 39.

13   Accordingly, the government has satisfied its burden with respect to the first and third elements of the

14   fugitive disentitlement statute. *See* 28 U.S.C. § 2466(a)(1).

15        **B.    Claimants Had Notice and Knowledge of the Warrants Issued in the Criminal Case**
               **(Element Two)**

16

17        With respect to the second element of the fugitive disentitlement statute, Claimants have clear

18   knowledge of the warrants issued in the criminal case, in addition to the two civil suits they are facing.

19   *See United States v. Zachary Apte and Jessica Richman*, Case No. 21-CR-0116 (N.D. Cal. Mar. 18,

20   2021); *SEC v. Richman, et al.*, Case No. 21-CV-01911 (N.D. Cal. Mar. 18, 2021). Claimants are

21   represented by the same counsel in each of the three cases they face; although counsel for APTE and

22   RICHMAN have not yet appeared in the criminal case, counsel for the government have met and

23   conferred with counsel for APTE and RICHMAN, who have confirmed that they are representing APTE

24   and RICHMAN in this civil forfeiture matter and the criminal case. Kaltsas Dec. ¶ 7.

25        As counsel for APTE and RICHMAN represent them in the criminal case, the Court is entitled to

26   presume that those same counsel, who should have knowledge of the arrest warrants issued by this

27   Court, communicated that fact to APTE and RICHMAN.[2] *Krishnan*, 469 F. Supp. 3d at 488 (attorneys

28        _____
          [2] The penalty sheets attached to the Indictment indicate that the government sought arrest

1  presumably communicate "notice of any matter within the scope of representation to the client,"

2  including the existence of a criminal warrant in a case related to a civil matter) (quoting *Link v. Wabash*

3  *R.R. Co.*, 370 U.S. 626, 634 (1962); *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d

4  295, 303 (4th Cir. 2017)); *see also Collazos*, 368 F.3d at 201 (a civil forfeiture claimant's attorney

5  involvement in a criminal case evidences knowledge of outstanding warrants for arrest related to that

6  criminal case). The government accordingly satisfies its burden with respect to the second element of the

7  fugitive disentitlement statute.

8  **C.   Claimants are Not Confined or Otherwise Held in Custody in Another Jurisdiction (Element Four)**

9

10  The government has also met the fourth factor of the test as Claimants are neither confined nor

11  held in custody in another jurisdiction. According to attorneys for Claimants, Claimants currently reside

12  as a married couple in Germany, where defendant APTE is a citizen. Kaltsas Dec. ¶ 3. There is no

13  evidence suggesting that RICHMAN or APTE are currently "confined or held in custody . . . for

14  commission of criminal conduct in that jurisdiction." 28 U.S.C. § 2466(a)(2). Accordingly, the

15  government satisfies its burden with respect to the fourth element of the fugitive disentitlement statute.

16  **D.   Claimants Have Deliberately Avoided Prosecution by Leaving the United States, and Declining to Reenter the Country (Element Five)**

17  The government also meets its burden in proving the fifth element of the statute. Preliminarily,

18  the government notes that "mere notice or knowledge of an outstanding warrant, coupled with a refusal

19  to enter the United States, does not satisfy [the fifth element of the fugitive disentitlement] statute."

20  *$671,160*, 730 F.3d at 1057 (quoting *$6,976,934.65 Plus Interest*, 554 F.3d 123, 132 (D.C. Cir. 2009)).

21  But in this case, like in *$671,160*, there is clear evidence that there is more than mere refusal on APTE's

22  and RICHMAN's part. In *$671,160*, the Ninth Circuit concluded that disentitlement was appropriate

23  because the defendant's "self-enforced absence from the United States [stood] in marked contrast to his

24  extensive travel to California prior to the issuance of the pending criminal charge." *Id.*

25  In this case, APTE and RICHMAN only left the United States after the execution of a search

26  warrant in 2019, when they first realized they might be facing criminal charges. There is no evidence

27

28  _____

warrants for APTE and RICHMAN. *See* Indictment at 36, 39.

1   that APTE and RICHMAN planned to leave for Germany, or that they ever lived there together before

2   the possibility of criminal charges first presented. Furthermore, APTE and RICHMAN left the country

3   on July 3, 2020, only days after getting their marriage certified in Marin County on June 29, 2020.

4   Kaltsas Dec. ¶ 3. Since the Indictment was filed on March 18, 2021, the government has contacted

5   counsel for APTE and RICHMAN several times. In April of 2021, the government received a letter from

6   RICHMAN's counsel, noting that RICHMAN had suffered from a medical condition that prevented her

7   travel, and that the symptoms from which she was suffering required APTE to provide care for her.

8   Kaltsas Dec. ¶ 2.[3] In a phone call with defense counsel on July 20, 2021, RICHMAN's counsel simply

9   provided that they were "not aware of any change [in Richman's health condition]" without any further

10  elaboration. Kaltsas Dec. ¶ 5. Government counsel spoke with counsel for APTE and RICHMAN again

11  on October 7, 2021, where APTE's and RICHMAN's counsel indicated that they were not aware of any

12  change in RICHMAN's medical condition; that APTE was still a caretaker for RICHMAN; and that

13  APTE and RICHMAN had no defined plans to return to the United States to face the criminal charges

14  against them. Kaltsas Dec. ¶ 7. In light of the timing of their marriage and its certification; the timing of

15  the search warrant; APTE's and RICHMAN's sudden departure from the United States to Germany,

16  where APTE is a citizen; the fact that they had never lived in Germany prior to leaving the United States

17  for the last time; and their lack of timeline or plan with respect to facing the criminal charges in this

18  Court, the available evidence clearly indicates APTE and RICHMAN are actively and deliberately

19  avoiding prosecution by leaving the country and declining to return.

20          The government understands that some medical issues may prevent RICHMAN from easily

21  traveling to the United States. But both she and APTE have had approximately seven months to plan a

22  return to the United States and face the criminal charges against them. Not only have they not provided

23  such a plan to the government, but there appears to be no timeline for return to the United States on the

24  horizon. This lack of plan evinces intent to *never* return to the United States. The fact that RICHMAN

25  may be ill does not justify her plan to evade this Court's jurisdiction over her criminal case forever.

26

27  ───────────────

28  [3] Opposing counsel has provided medical documentation to this effect and has consented to the government filing those documents under seal, which it has done here as exhibits to the Kaltsas Declaration.

1   There is even less justification for APTE's continued absence as he has never suffered any of the

2   symptoms RICHMAN claims prevents her return. Indeed, *all* justifications for not returning to the

3   country crumble in light of their clear intent to continue litigating this civil action; despite the health

4   problems RICHMAN purportedly faces, APTE and RICHMAN have decided that this civil legal

5   endeavor is worthier of pursuit than facing the charges outlined in the Indictment. The Court should not

6   allow APTE and RICHMAN to use the law to shield themselves from criminal liability while

7   simultaneously fighting a civil case.

8        The government further acknowledges that Claimants may have multiple reasons for not desiring

9   to return to the United States, with a lack of interest in facing criminal charges among those reasons. But

10  the existence of multiple reasons for not returning to the United States is of no moment for purposes of

11  fugitive disentitlement. Indeed, "the existence of other factors that might have also motivated [the

12  claimant] to remain abroad, such as [their foreign] citizenship and residency, does not [invalidate the

13  fact that Claimants] made a conscious choice to not 'enter or reenter the United States' in order to avoid

14  criminal prosecution." *United States v. $525,695.24 Seized from JPMorgan Chase Bank Investment*

15  *Account*, 869 F.3d 412, 418 (6th Cir. 2017) (quoting *$671,160*, 730 F.3d at 1056 n.2). APTE's and

16  RICHMAN's decision not to enter or reenter the United States in order to avoid prosecution "need not

17  be the sole motivating factor" for remaining in Germany. *Id.* Rather, "[a]ll that is required is a finding

18  that 'after notice or knowledge of the fact that a warrant or process has been issued for [their]

19  apprehension, in order to avoid criminal prosecution,' [the claimants] 'decline[d] to enter or reenter the

20  United States to submit to its jurisdiction.'" *Id.*; *see also Technodyne*, 753 F.3d at 383 (concluding that,

21  although the Court must conclude that there was a specific intent to avoid prosecution to find

22  disentitlement appropriate, a "specific intent" does not equate to "sole, principal, or dominant intent.").

23  *Technodyne*, 753 F.3d at 383.

24       Accordingly, even if APTE and RICHMAN remained in Germany for any reason in addition to

25  the desire to avoid criminal prosecution, that intent to avoid prosecution is enough to disentitle them

26  from their claims in the instant case. To conclude otherwise would allow for the

27            "unseemly spectacle" of allowing an accused to absent himself
             deliberately in order to avoid prosecution in the United States while using
28           United States courts to retrieve the proceeds of his crime . . . it would defy
             logic to infer that Congress *sub silentio* intended to allow the fugitive to

1

2
create such an abomination by the simple expedient of claiming some
additional reason for not returning. *Id.*

3
*Id.* at 385-86 (quoting *Collazos*, 368 F.3d at 200).

4
The Court should accordingly strike APTE's and RICHMAN's claims pursuant to the fugitive

5
disentitlement statute. The government notes that, if the Court wishes, it would be happy to engage in

6
discovery on this particular issue before discovery on the substantive claims on this case as this is a

7
threshold issue that should be resolved in advance of other issues. *See $671,160*, 730 F.3d at 1059

8
(concluding that the district court correctly addressed fugitive disentitlement before other motions the

9
claimant had raised in that case); *Krishnan*, 469 F. Supp. 3d at 487 (concluding that fugitive

10
disentitlement is a "threshold issue"). The government does note, however, that there is some likelihood

11
that APTE and RICHMAN would raise constitutionally based objections to reciprocal requests for

12
discovery, rendering that route moot. *See $671,160*, 730 F.3d at 1058-59 (noting that claimant asked for

13
additional discovery before any decision on the motion while simultaneously rebuffing the government's

14
discovery requests). If the Court orders discovery, but Claimants refuse to offer discovery on Fifth

15
Amendment or other grounds, the government asks the Court to maintain jurisdiction over this motion to

16
adjudicate the dispute accordingly.

17
### E. The Fugitive Disentitlement Doctrine Applies Equally to Claimant 465 Ocean Land Trust, Which Also Lacks Standing to Bring a Claim

18
The Court should also disentitle the Land Trust from its claim to the Defendant Properties. The

19
fugitive disentitlement statute "may be applied to a claim filed by a corporation if any majority

20
shareholder, or individual filing the claim on behalf of the corporation is a person to whom" the doctrine

21
may be applied. 28 U.S.C. § 2466(b). Although 465 Ocean Land Trust is a trust and not a corporation,

22
the doctrine applies with equal force, especially as APTE and RICHMAN are both the settlors and

23
beneficiaries of the Land Trust. The Land Trust's claim should also be stricken because it lacks standing

24
to bring a claim in the first place.

25
Applying the fugitive disentitlement doctrine to the Land Trust's claim is entirely appropriate

26
here. The purpose of the doctrine is to "disable any claim or defense that is solely derivative of the

27
fugitive's claim." *United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade Cty.,*

28
*Fla.*, 868 F.2d 1214 (11th Cir. 1989). Indeed, in *United States v. $129,374 in U.S. Currency*, 769 F.2d

583, 587 (9th Cir. 1985), the Ninth Circuit concluded that "[i]f the fugitive is deprived of presenting any claim or defense in [a forfeiture] action as the result of his fugitive status, the conservator of his estate must suffer the same consequences when he seeks to advance the same claim or defense." Although a conservator differs from a trustee in many respects, both maintain a fiduciary duty to act for the benefit of another. Traditionally, under both the Restatement (Second) of Trusts and the Restatement (Third) of Trusts, a trust is not considered a distinct legal entity but a fiduciary relationship between multiple people. Restatement (Third) of Trusts § 2 (2003). "[A] person in a fiduciary relationship to another is under a duty to act for the benefit of the other as to matters within the scope of the relationship." *Id*. Cmt. b. A trustee thus owes a fiduciary duty to, and must act in the best interest of, the beneficiaries of the trust as opposed to the trust itself.

In this case, the trust documents filed by the Land Trust confirm that Brian D. Smith, Esq. served as sole trustee of the Land Trust from the date of its formation on February 4, 2020 until his resignation on July 3, 2021, on which date, Gabriel Ceriotti—APTE's friend—was appointed successor trustee of the Land Trust. Dkt. No. 18 at 4-5. Mr. Ceriotti then filed a claim on behalf of the Land Trust on July 8, just five days after his appointment. *Id*. at 1. To be clear, however, Mr. Ceriotti filed the claim in his capacity as successor trustee *for the benefit of* APTE and RICHMAN*, who are the settlors and sole beneficiaries of the Land Trust. In addition, Mr. Ceriotti seeks to advance the same claim to the Defendant Properties asserted by the beneficiaries: "a cognizable right, beneficial interest, and ownership interest." Dkt. No. 18 at 3. The Land Trust, through Mr. Ceriotti, accordingly stands in the shoes of APTE and RICHMAN, who are themselves barred from asserting defenses against the forfeiture of the Defendant Properties by the fugitive disentitlement doctrine. It follows that Claimant Land Trust should also be barred from asserting the same claim in the Defendant Properties as APTE and RICHMAN. Permitting the Land Trust to continue in the forfeiture proceedings would undermine the very purpose of the doctrine by allowing APTE and RICHMAN, criminal defendants, to enjoy their ill-gotten gains as a result of a loophole without facing the consequences of their criminal activities. This is the same "unseemly spectacle" described above, and the Court should not permit a claim to move forward simply because Claimants employed a trust to hold title to the Defendant Properties. *Technodyne*, 753 F.3d at 385-86 (quoting *Collazos*, 368 F.3d at 200).

Similarly, the Court should dismiss the claim filed by Claimant Land Trust for lack of standing pursuant to Supplemental Federal Rule of Civil Procedure G(8)(c)(i)(B). As noted above, standing is a threshold issue in every civil forfeiture case. *United States v. $8,440,190.00 in US Currency*, 719 F.3d 49, 57 (1st Cir. 2013). "The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court," whereas "'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution." *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5-6 (D.D.C. 2009) (quoting ASSET FORFEITURE LAW IN THE UNITED STATES: A TREATISE ON FORFEITURE LAW, § 9-4 at 326). To meet Article III standing requirements, a claimant must show a "colorable" claim to an ownership, possessory, or secured interest in the property. *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 818 (7th Cir. 2013); *United States v. $38,852.00 in U.S. Currency*, 328 F. Supp. 2d 768, 769 (N.D. Ohio 2004).

In a forfeiture action, courts look to state law to determine the "existence and extent" of a claimant's property interest. *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119 (9th Cir. 2004). Though state law defines a claimant's interest in specific property, "federal law determines the effect of [that] ownership interest on [the claimant's] right to bring a claim." *United States v. U.S. Currency, $81,000.00*, 189 F.3d 28, 33 (1st Cir. 1999) (citing *United States v. Nat'l Bank of Comm.*, 472 U.S. 713, 722 (1985)); *see also United States v. 5 S. 351 Tuthill Rd.*, 233 F.3d 1017, 1021 (7th Cir. 2000) ("State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing.").

This case involves a Florida land trust created pursuant to Fla. Stat. § 689.071. A land trust is unique in that legal title and beneficial interests in a property are generally vested in different people, essentially dividing the "bundle of sticks" that typically define property ownership. Specifically:

> In a land trust the legal and equitable title lies with the trustee and the beneficiary retains what is referred to as a personal property interest . . . It is important to note, however, that though referred to as personal property, most of the usual attributes of real property ownership are retained by the beneficiary under the trust agreement. In fact, the only attribute of ownership ascribed to the trustee is that relating to title, upon which third parties may rely in transactions where title to the real estate is of primary importance. . . Title to property does not necessarily involve ownership of

1

2

3

4

> the property. Title refers only to a legal relationship to the land, while ownership is comparable to control and denotes an interest in the real estate other than that of holding title thereto . . . The key elements of ownership are control and the right to enjoy the benefits of the property . . . Thus, where the trust beneficiary is the recipient of all the benefits of the property and controls the management of the property, he is the party most benefited . . . regardless of who holds the title.

5   *People v. Chi. Title & Tr. Co.*, 389 N.E.2d 540, 543-44 (Ill. 1979) (citations omitted); *see also Taylor v.*

6   *Richman's New Approach Ass'n, Inc.*, 351 So. 2d 1094 (Fla. 2d DCA 1977) ("In this type of land trust,

7   both the legal and equitable title are vested in the trustee. The beneficiary has no interest in either. The

8   rights, privileges and obligations of the beneficiaries are not interests in real estate, but are expressly

9   characterized as personal property."). Indeed, although a land trust beneficiary's name does not appear

10  publicly as an owner of record, the beneficiary generally retains certain ownership rights such as the

11  right of possession, operation, maintenance, and control along with the right to use and enjoy the

12  property; outside of holding title, the beneficiary of a land trust exercises and manages all rights of

13  ownership, especially with a power of direction. *See* 76 Am. Jur. 2d Trusts § 261. Moreover, while real

14  and personal property interests of Florida land trust are divided between trustee and beneficiary, a

15  Florida land trust is "essentially the same as ordinary trust in terms of duties, rights and responsibilities

16  of trustee and beneficiary." *In re Saber*, 233 B.R. 547, 554 (Bkrpcy. S.D. Fla. 1999).

17          Per the documents filed by the Claimants and pursuant to Florida law, Mr. Ceriotti, in his

18  capacity as trustee, holds 100 percent of the legal and equitable interest in the Defendant Properties.

19  APTE and RICHMAN each hold a fifty percent beneficial interest in the Land Trust. Federal law

20  subsequently governs which of the claimants has standing to contest the forfeiture based on a superior

21  interest in the properties.

22          First, Claimant Land Trust's assertion of a beneficial interest in the Defendant Properties is

23  meritless, as the trust documents show that only APTE and RICHMAN hold beneficial interests in the

24  Defendant Properties. Second, to the extent that Claimant Land Trust asserts an ownership interest in the

25  Defendant Properties, the Land Trust does not qualify as an "owner" as defined by 18 U.S.C.

26  § 983(d)(6) which specifically excludes "a nominee who exercises no dominion or control over the

27  property." Indeed, it is well established in the world of forfeiture law that bare legal title, without more,

28  is insufficient to establish Article III standing; a claimant must exercise dominion and control over the

property and be more than a nominee to adequately assert standing. *See United States v. 1990 Chevrolet Corvette*, 37 F.3d 421, 422-23 (8th Cir. 1994) (titled owner lacks standing to contest forfeiture of property over which she exercised no dominion or control and lacked financial means to acquire it); *8 Gilcrease Lane*, 641 F. Supp. 2d at 5-6 (applying 18 U.S.C. § 983(d)'s definition of owner to a standing inquiry); *United States v. 2005 Dodge Magnum*, 845 F. Supp. 2d 1361, 1367–1370 (N.D. Ga. 2012) (bare legal title is not sufficient; the heart of Article III standing is the existence of an actual injury, and nominees and straw owners suffer no injury if the property is forfeited); *cf. 5208 Los Franciscos Way*, 385 F.3d at 1192-93 (claimants lacked Article III standing where assertion of standing was based on, as a matter of state law, a fraudulent transfer of title to claimants).

Here, Claimant Land Trust is merely a nominee and not an "owner" of the Defendant Properties for forfeiture purposes. Pursuant to the explicit terms of the trust, Mr. Ceriotti is not permitted to perform any action on behalf of the trust without the direction and written consent of APTE and RICHMAN. Only APTE and RICHMAN have the right to alienate the properties, as well as collect any income generated by them. APTE and RICHMAN are exclusively responsible for paying all taxes and costs associated with the properties. Most importantly, the funds used to purchase the Defendant Properties were provided by APTE and RICHMAN. In fact, Mr. Ceriotti has no financial stake in the properties and would not be injured should the properties be forfeited to the government. Therefore, the Land Trust does not have an interest sufficient to maintain standing in these proceedings. The Court should accordingly strike the Land Trust's claim as it is a mere nominee holding title for APTE and RICHMAN, and because it lacks standing to bring a claim.

## V.    CONCLUSION

Claimants' attempts to shield themselves from criminal prosecution while actively litigating a civil forfeiture action should not be tolerated. To allow otherwise would essentially provide a loophole to Claimants to potentially enjoy the proceeds of their criminal activities while evading the consequences for their fraud on health care benefit programs and investors. APTE and RICHMAN should further not avoid the fugitive disentitlement doctrine simply because they utilized a land trust to hold the assets subject to forfeiture. Indeed, the legal nature of the Land Trust renders it incapable of asserting adequate standing, let alone serving as an independent entity capable of avoiding the fugitive

1    disentitlement doctrine. The Court should accordingly strike claimants' claims.

2

3    DATED:  October 18, 2021                           Respectfully submitted,

4                                                       STEPHANIE M. HINDS
                                                        Acting United States Attorney
5

6                                                       _____/s/_____
                                                        CHRIS KALTSAS
7                                                       Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28